PD-1013-15

PD-1013-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/6/2015 9:04:26 AM
Accepted 8/11/2015 11:32:54 AM
ABEL ACOSTA
CLERK

NO. _____ PD

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

_____

**WILLIAM MICHAEL DIXON**

*Petitioner,*

**VS.**

**THE STATE OF TEXAS**

*Respondent*

_____

Petition in Cause No. 1383453 from the
208TH District Court of Liberty County, Texas and
the Court of Appeals for the
14TH District of Texas

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

DAVID RUSHING
723 MAIN STREET SUITE 816
HOUSTON, TEXAS 77002
(713) 877-1300
davidcrushing@hotmail.com
SBOT NO. 24051276

ATTORNEY FOR PETITIONER

FILED IN
COURT OF CRIMINAL APPEALS

August 11, 2015

ABEL ACOSTA, CLERK

## IDENTITIES OF PARTIES AND COUNSEL

PETITIONER:       WILLIAM MICHAEL DIXON

PRESIDING JUDGE:     HON. WAYNE MALLIA
208th District Court
Harris County Courthouse
1201 Franklin, 17th Floor
Houston, Texas 77002
(713) 755-6374

PROSECUTORS:      MR. JOHN CRUMP
MR. DAVID OVERHULS
HARRIS COUNTY DISTRICT
ATTORNEYS OFFICE
1201 FRANKLIN
HOUSTON, TEXAS 77002
(713) 755-5800

TRIAL COUNSEL:     MR. DAVID RUSHING
723 MAIN STREET SUITE 816
Houston, Texas 77002
(713) 877-1300

APPELLATE COUNSEL:   MR. DAVID RUSHING
723 MAIN STREET SUITE 816
HOUSTON, TEXAS 77002
(713) 877-1300

MR. TOM ABBATE
2425 WEST LOOP SOUTH, STE 200
HOUSTON, TX 77027
(832)-687-6447

APPELLEE COUNSEL:   MS. JESSICA CAIRD
HARRIS COUNTY DISTRICT
ATTORNEYS OFFICE
1201 FRANKLIN
HOUSTON, TEXAS 77002
(713) 755-5800

**TABLE OF CONTENTS**

IDENTITIES OF PARTIES AND COUNSEL ......................................................2

INDEX OF AUTHORITIES.........................................................................4

STATEMENT REGARDING ORAL ARGUMENT ...............................................6

STATEMENT OF THE CASE.......................................................................6

STATEMENT OF PROCEDURAL HISTORY......................................................7

QUESTION PRESENTED FOR REVIEW I ......................................................7

REASON FOR REVIEW ...........................................................................7

QUESTION PRESENTED FOR REVIEW II.....................................................10

REASON FOR REVIEW ..........................................................................10

PRAYER FOR RELIEF ...........................................................................12

CERTIFICATE OF SERVICE .....................................................................12

CERTIFICATE OF COMPLIANCE...............................................................13

APPENDIX ........................................................................................14

# INDEX OF AUTHORITIES

**Cases**

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002) .....................................8

*Curry v. State*, 30 S.W.3d 394 (Tex.Crim.App.2000) .............................................11

*Dixon v. State*, 14-14-00510-CR (Tex.App.-Houston [14th District] 2015)...........10

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996).....................................9

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008).....................................11

*Miranda v. Arizona*, 384 U.S. 436 (1966) ...............................................................7

*Rhodes v. State*, 945 S.W.2d 115 (Tex. Crim. App. 1997).......................................9

*Stansbury v. California*, 511 U.S. 318 (1994) ..........................................................9

*Thompson v. Keohane*, 516 U.S. 99 (1995)...............................................................9

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007) ...................................11

**Statutes**

Tex. Code Crim. Proc. Ann. art. 38.22 ......................................................................7

NO. _____ PD

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

_____

**WILLIAM MICHAEL DIXON**

*Petitioner,*

**VS.**

**THE STATE OF TEXAS**

*Respondent*

_____

Petition in Cause No. 1383453 from the
208TH District Court of Liberty County, Texas and
the Court of Appeals for the
14TH District of Texas

_____

**PETITION OF DISCRETIONARY REIVEW
TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL
APPEALS OF TEXAS**

William Dixon, petitions the Court to review the judgment affirming
his conviction for driving while intoxicated, 3rd offender in Cause No. 1383453

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist the Court to resolve whether the confession was obtained in violation of the Fourth Amendment, and whether the evidence was legally sufficient to support the conviction obtained against the Petitioner in this case.

## STATEMENT OF THE CASE

This is an appeal from the Trial Court's **JUDGMENT OF CONVICTION BY JURY** finding WILLIAM MICHAEL DIXON (hereinafter, "Petitioner,"), GUILTY of the charge of DRIVING WHILE INTOXICATED 3RD OFFENDER and sentencing him to 40 YEARS TDCJ in Cause No. 1383453. (CLRK. REC. - 82). On June 7, 2013, a grand jury indicted Petitioner for the above felony offense. (CLRK. REC. – 10).

On June 18, 2014, a jury was seated and sworn for trial in the above described cause number. (CLRK. REC. – 63). On June 20, 2014, after hearing testimony from the State and Defense, the jury was excused to deliberate. (CLRK. REC. – 70). That same day, the jury returned a verdict of GUILTY. (CLRK. REC. – 78). Later that day, after hearing testimony from the State and the Defense, the trial judge sentenced Petitioner to 40 YEARS. (CLRK. REC. – 82). Petitioner filed a NOTICE OF APPEAL on June 20, 2014. (CLRK. REC. – 87).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals rendered its decision affirming the petitioner's conviction on July 7, 2015. The Petitioner did not file a motion for rehearing. This petition was then filed with the clerk of the court of appeals within 30 days after the ruling.

## QUESTION PRESENTED FOR REVIEW I

***Did the trial court err in denying Petitioner's Motion to Suppress his recorded confession?***

## REASON FOR REVIEW

Petitioner asserts that the trial court erred in denying his motion to suppress statements he made to Martinez because Martinez interrogated him without providing him the benefits of warnings set out in *Miranda* and the warnings required by Article 38.22 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 442–57 (1966). It is undisputed that Petitioner had not received any Miranda warnings or statutory warnings when he made the statements in question. Petitioner's statements to Martinez were made in response to questioning by Martinez. Therefore, this court must decide whether Petitioner was in custody when he made the statements.

Martinez stated that he "detained" Petitioner at the scene by handcuffing him and placing him in the back seat of the officer's vehicle, but did not inform Petitioner that he was under arrest, did not Mirandize him, and testified that Petitioner was not

7

free to leave. (RR.VI – 54, 57). Martinez further testified that he had already formed the opinion that the Petitioner was intoxicated prior to speaking with him again. (RR.VI – 59). After finishing his investigation, Martinez transported Petitioner to the Humble substation to "conduct the field sobriety tests in a more controlled environment." (RR.VI – 62). Martinez further stated that he remembered the Petitioner asking him if he, the Petitioner, was going to jail, to which Martinez replied that he was not sure. (RR.VI – 84).

Martinez stated that although he recalled Petitioner repeatedly stating that he was not driving during the trip to the substation, this occurred after Petitioner had already admitted to driving in response to Martinez's questions. (RR.VI – 82). Petitioner asserted that Martinez did not Mirandize him prior to this questioning. (RR.II – 4). Martinez further testified that Petitioner asked him why he was being transported to the substation, however, Martinez could not recall whether he had answered the question. (RR.VI – 83).

Applying the pertinent legal standards to the case under review, the trial court erred in denying Petitioner's motion to suppress these statements. The placing of handcuffs on a defendant does not, in and of itself, automatically mean he is in custody. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002); *Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997). However, "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of

8

movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). The objective circumstances of the interrogation indicate that a reasonable person would have felt that they were not at liberty to terminate the interrogation and leave. *Id.* at 323; *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Further, under the test outlined in *Dowthitt*, at least three of the four situations are present: 1) Petitioner was physically deprived of his freedom of action by being handcuffed and placed in the back of the officer's vehicle; 2) under such circumstances, most people would not feel free to leave as they could not open the door and walk out of the officer's vehicle; 3) there was probable cause to arrest the Petitioner, but Martinez did not inform him that he was free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). Further, the final situation requires the officers' knowledge of probable cause be manifested to the suspect. *Id.* Here, when asked Petitioner asked whether he was going to jail, the officer stated that he was not sure. (RR.VI – 84). However, Martinez stated that the uncertainty revolved around whether Petitioner was going to jail for DWI or public intoxication, and not whether he was going to be released. (RR.IV – 84).

The Court of Appeals, however, stated that the short distance the officer transported the Petitioner, prior to transporting him to the substation, would not have led a reasonable person to believe that their freedom of movement had been constrained to the level of a formal arrest. *Dixon v. State*, 14-14-00510-CR

9

(Tex.App.-Houston [14th District] July 7, 2015). However, this ignores the fact that the Petitioner sat, handcuffed, in the back of the patrol car for nearly an hour in total. *Dixon*, 14-14-00510-CR. Most reasonable people would not feel that they are free to leave after they have been restrained for half as much time in the back of a patrol vehicle. Therefore, both the trial court and the court of appeals erred in holding that Petitioner was not under arrest during the questioning.

## QUESTION PRESENTED FOR REVIEW II

***Was the evidence in this case legally insufficient to convict Petitioner of the charge Driving While Intoxicated?***

## REASON FOR REVIEW

The evidence in this case was legally insufficient to convict Petitioner of the charge of Driving While Intoxicated as there is no evidence that Petitioner was actually driving the vehicle at the time of the accident. Castaneda testified that, after the accident, she saw Petitioner exiting from the driver's side of the vehicle. (RR.VI – 12). She did not see anyone else exit the vehicle. (RR.VI – 18).

However, Castaneda also stated that she was not asked if Petitioner was the driver by the officers at the scene. (RR.VI – 21). Further, Castaneda testified that during a later photo lineup, she was not sure whether the photo she picked was that of the Petitioner. (RR.VI – 22). Finally, Ruzzi testified that Castaneda indicated that she wrote "[p]ossible man I saw getting out of a car," next to the Petitioner's photo during the lineup. (RR.VI – 43). Further, Martinez stated that he had already placed

10

Petitioner in the back of his vehicle before Castaneda identified him as the driver. (RR.VI – 77). Martinez further testified that the pickup truck was partially blocking Castaneda's view when she made her identification. (RR.VI – 80).

Finally, Petitioner presented evidence showing that he indeed was not the driver during the accident. During the voir dire of the defense's first witness, Keeton asserted his Fifth Amendment privilege when asked whether he was driving the vehicle that night. (RR.VI – 90). Before the jury, Keeton stated that the passenger's side door did not open. (RR.VI – 97). Defense counsel also presented the testimony of Coronado, who stated that Keeton had in fact been driving that night, and that not all of the doors on the vehicle worked (RR.VI – 104).

Normally, a court must afford almost complete deference to the jury's credibility determinations, and may not re-evaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder, as any inconsistencies are resolved in favor of the verdict. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000). However, this case bears further consideration due to the admission of illegally obtained evidence. Therefore, court of appeals' ruling on this matter was incorrect because of its erroneous decision regarding the motion to suppress.

**PRAYER FOR RELIEF**

ACCORDINGLY, this Court should GRANT this PETITION FOR DISCRETIONARY REVIEW and ORDER briefs on the merits to answer the question of whether the evidence against the Petitioner was legally sufficient to support his conviction.

Petitioner further prays for all relief to which he may be entitled.

Respectfully submitted,

_____

DAVID RUSHING
723 MAIN STREET SUITE 816
HOUSTON, TEXAS 77002
(713) 877-1300
davidcrushing@hotmail.com
SBOT NO. 24051276

ATTORNEY FOR PETITIONER

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing PETITION FOR DISCRETIONARY REVIEW was delivered to the HARRIS County District Attorney's Office by hand delivery on August 6, 2015.

_____

DAVID RUSHING

# CERTIFICATE OF COMPLIANCE

I hereby certify that there are 2,000 words contained in this document.

_____
DAVID RUSHING

# APPENDIX

Affirmed and Memorandum Opinion filed July 7, 2015.



In The

# Fourteenth Court of Appeals

NO. 14-14-00510-CR

**WILLIAM MICHAEL DIXON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1383453

## MEMORANDUM OPINION

We consider two issues in this appeal from a conviction for driving while intoxicated: (1) whether the trial court abused its discretion by denying a motion to suppress a recorded statement, and (2) whether the evidence is legally sufficient to support the conviction. We conclude that the trial court did not abuse its discretion by denying the motion to suppress, and we further conclude that the evidence is sufficient. We therefore affirm the trial court's judgment.

14

## BACKGROUND

The complainant's car was rear-ended by a truck. The collision did not cause serious damage to either person or property. When the complainant exited her car, she saw appellant getting out of the driver's door of the truck that hit her. According to the complainant, appellant looked upset, was not walking straight, and was slurring his speech. The complainant asked appellant if he was drunk, but appellant ignored her and walked away.

When an officer arrived, several tow truck drivers were already there, and they were trying to prevent appellant from leaving the scene of the accident. The officer saw appellant walk away from the accident and throw a beer bottle into a ditch. The officer quickly handcuffed appellant and placed him into the back of the patrol car. The officer did not advise appellant that he was under arrest and he did not warn appellant of his rights under *Miranda*.

A dashboard camera in the officer's patrol car recorded the officer's investigation. As the officer was processing appellant's background information, appellant stated that he was "f****d up." The officer responded, "You're f****d up? Then why [were] you driving?" Appellant answered, "Because that bitch got me f****d up." After a short pause, appellant continued, "Should have left it in the garage, man, I don't know why I was driving."

Appellant asked the officer several times if he would be taken to jail, but the officer responded that he was not sure yet. Appellant recanted his statement, said that he had not been driving, and pleaded with the officer repeatedly to let him walk home.

Appellant waited in the back of the patrol car for about thirty-five minutes before the officer transported him to a police substation. At the substation, the

15

officer administered three field-sobriety tests: the horizontal gaze nystagmus test, the walk and turn test, and the one-legged stand test. Appellant displayed clues of intoxication on all three tests.

Appellant moved to suppress his recorded statement on the grounds that he was in custody at the time of the statement. In a pretrial hearing, appellant testified that he was not free to leave after the officer placed him in the patrol car. Appellant also testified that he could not recall whether the officer had read him his rights. The trial court denied the motion, and the recorded statement was published to the jury during the trial on the merits.

Appellant's main defensive theory at trial was that he was not the driver. In support of this theory, appellant called his girlfriend as a defense witness. The girlfriend testified that appellant was a passenger in the back of the truck and that another man had been driving at the time of the accident. The girlfriend explained that she and the other man left appellant at the scene because they wanted to avoid the police.

Prior to trial, the complainant identified appellant in a photo array, but the identification was somewhat tentative. The complainant wrote on the photo array that appellant was "possibly" the man she had seen on the night of the accident. During the trial itself, the complainant expressed much more certainty. She testified that appellant was the only person who had exited the truck, and she was sure that appellant had been driving at the time of the accident. The State produced additional evidence to support the complainant's in-court identification: on the night of the accident, the keys to the truck were found inside appellant's pocket.

16

**MOTION TO SUPPRESS**

In his first issue, appellant argues that the trial court erred by denying the motion to suppress his recorded statement. Appellant contends that the statement was inadmissible because it was obtained during a custodial interrogation and without the benefit of his *Miranda* warnings. The State responds that the statement was admissible because it was given voluntarily during an investigative detention, rather than in custody. We agree with the State.

## I.      Applicable Law and Standard of Review

A defendant's oral statements made during a custodial interrogation are inadmissible unless the defendant was warned of his rights under *Miranda*. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). If the oral statements were made during a noncustodial detention, the trial court is not required to suppress them even in the absence of these warnings. *See Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.—Austin 1997, no pet.) (op. on reh'g).

Case law separates interactions among officers and citizens into three categories: (1) consensual encounters, (2) investigative detentions, and (3) arrests or their custodial equivalent. *See Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Both detention and arrest involve a restraint on one's freedom of movement; the difference is in the degree. *See State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). An arrest places a greater degree of restraint on an individual's freedom of movement than does an investigative detention. *Id.* at 290. The mere act of handcuffing, as was done here, does not establish custody; rather, it is one of a range of relevant factors in determining that a suspect is in custody. *See Ortiz v. State*, 421 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002)

(holding that an investigative detention did not evolve into an arrest simply because the officer handcuffed the defendant).

When considering whether a person is in "custody" for *Miranda* purposes, we apply a "reasonable person" standard, *i.e.*, a person is in custody "only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). This inquiry requires an examination of all of the objective circumstances surrounding the interaction at issue. *See Herrera*, 241 S.W.3d at 525. The subjective belief of law enforcement officials about whether a person is a suspect does not factor into the determination unless an official's subjective belief was somehow conveyed to the person who was questioned. *Id.* at 525–26. The defendant bears the initial burden of demonstrating that a statement was the product of a custodial interrogation, and the State has no burden to show compliance with *Miranda* until the defendant meets that initial burden. *See Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005).

Several factors often come into play in considering whether a particular interaction amounted to an arrest or detention, including the amount of force displayed, the duration of detention, the efficiency of the investigative process, whether it was conducted at the original location or the person was transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *See Sheppard*, 271 S.W.3d at 291 (citing George E. Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 7.34 (2d ed. 2001)).

We review a trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the court's determination of historical

18

facts that are supported by the record and reviewing the court's application of the law to the facts de novo. *See State v. McClain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). When, as here, the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *See Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

## II. Analysis

The video evidence shows that when the officer arrived at the scene, he could not immediately locate the driver who had caused the accident. Tow truck drivers advised the officer that appellant was involved with the accident, and the officer could see that appellant was trying to leave. Based on appellant's actions, the trial court could have reasonably found that the officer needed to detain appellant in order to preserve the scene. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997) ("[O]fficers may use such force as reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety."); *see also Wert v. State*, 383 S.W.3d 747, 754 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that officers had acted reasonably by detaining the defendant in handcuffs when the record showed that the defendant had made "repeated attempts to get up" and leave the scene).

Placing appellant in handcuffs and into the back of the patrol car does not necessitate a finding of custody. *See Sheppard*, 271 S.W.3d at 291. The officer testified that he used the restraints so that he "could finish up the investigation of the crash." There is no indication that the officer used more force than was reasonably necessary to effectuate the detention. Accordingly, the evidence does not support a finding that the interaction evolved into an arrest. *Id.* ("If the degree of incapacitation appears more than necessary to simply safeguard the officers and

19

assure the suspect's presence during a period of investigation, this suggests the detention is an arrest."); *see also Ortiz*, 421 S.W.3d at 891.

Before appellant made his oral statement, his interaction with the officer was quite limited. In fact, the officer quickly returned to the scene of the crash after appellant was placed in the back of the patrol car. The officer came back to the patrol car approximately thirteen minutes later, and it was at that time that appellant volunteered to the officer that he had been driving. A reasonable person would not think that he was under arrest after waiting alone in a patrol car for such a short duration. *Cf. Balentine*, 71 S.W.3d at 770 & n.7 (holding that a detention of less than an hour was not unreasonable under the circumstances).

The record shows that there was some transportation in this case. The officer detained appellant a short distance away from the scene of the accident. Moments after placing appellant in the back of the patrol car, the officer moved his patrol car around the corner to bring the patrol car closer to the scene of the accident. The transportation lasted less than a minute. A reasonable person would not have believed that the transportation graduated the detention into a formal arrest. *See Joseph v. State*, 865 S.W.2d 100, 103 (Tex. App.—Corpus Christi 1993, pet. ref'd) (holding that the defendant had not been placed under arrest when the officer transported him five blocks to allow for a witness to identify him).

Throughout their interaction, the officer repeatedly advised appellant that he did not know if appellant was going to jail. Even though the officer did not expressly indicate that appellant was being detained, a reasonable person would not have believed that his freedom of movement was restrained to the extent of a formal arrest. *See Balentine*, 71 S.W.3d at 767–68 (holding that, even though the officer did not tell the defendant whether he was being arrested or detained, the interaction did not elevate from a detention to an arrest); *Ortiz*, 421 S.W.3d at 889

20

(holding that the interaction was a detention rather than an arrest where the officer told the defendant, "[Y]ou're not under arrest right now. You're just being detained until we figure out what's going on.").

Considering all the factors together, the trial court reasonably concluded that appellant was in a detention, rather than under arrest, at the time of his recorded statement. Because appellant was not in custody, the trial court did not abuse its discretion by denying the motion to suppress. *See Ortiz*, 421 S.W.3d at 891.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant argues that the evidence presented in the case is legally insufficient to support the conviction.

## I.  Applicable Law and Standard of Review

To obtain a conviction for driving while intoxicated, the State was required to prove that appellant was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code § 49.04(a). Where, as here, the State also sought the enhanced offense of a felony in the third degree, the State was further required to show that appellant has previously been convicted twice of driving while intoxicated. *Id.* § 49.09(b)(2). Appellant stipulated at trial that he had two prior convictions, and on appeal, he does not dispute that that there is legally sufficient evidence of his intoxication, or that he was in a public place at the time of the accident. His sole appellate argument is that there is no evidence that he was operating a motor vehicle.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App.

2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.2007).

## II.    Analysis

The record contains ample evidence that appellant was operating a motor vehicle. Appellant stated on video that he was driving the truck. The complainant identified appellant as the driver, and the officer testified that he found the keys to the truck in appellant's pocket. There was some evidence presented that calls this element into question: appellant's girlfriend testified that appellant was not the driver, and the complainant was unsure of her identification of appellant when she was shown the photo array. However, the jury was free to resolve this conflict in the evidence and find that appellant was driving at the time of the accident.

Viewing the record in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a jury could find every element of the offense beyond a reasonable doubt.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).