**Affirmed and Majority and Concurring Opinions filed January 28, 2014.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-12-00726-CR**

---

**RICHARD EARL ORTIZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1319044**

## M A J O R I T Y   O P I N I O N

Appellant Richard Earl Ortiz appeals from his conviction for aggravated assault of a family member. Prior to trial, the court below denied appellant's motion to suppress out-of-court statements he made to a police officer before he was administered *Miranda* warnings. A jury then found appellant guilty and assessed his punishment at 35-years' imprisonment. In a single issue on appeal, appellant contends the trial court erred in denying his motion to suppress. We affirm.

## Background

At the suppression hearing, Officer Jeffrey Spencer of the Baytown Police Department testified that on September 5, 2011, he was dispatched to a residence in response to a report of an assault involving appellant. Spencer recognized appellant's name, he said, because several officers in the department had spoken with appellant in the past and appellant had assaulted one of the department's sergeants. Because of appellant's past history, Spencer waited for backup before proceeding to the residence in question. When he arrived at the location, Spencer saw appellant walking out of a yard towards the street. Spencer stopped his patrol car a couple of houses away and observed appellant walking down the middle of the street with his fists clenched by his side. Spencer believed at that point that appellant was ready to fight the officers, and Spencer asked appellant "what was going on . . . how was it going . . . ?" Appellant then looked up and yelled, "It's a beautiful night tonight."

Spencer told appellant to stop and turn around. Appellant did so, and without being given further instructions, appellant placed his hands behind his back. Spencer then observed blood on appellant's hands and handcuffed appellant. Spencer told appellant, "Richard, you're not under arrest right now. You're just being detained until we figure out what's going on." Spencer further explained to appellant that he was only being detained until the officers could figure out what had happened. According to Spencer, at that time, he did not know whether there was even a victim in the area, so he would not have known what, if any, charge appellant should be arrested for.

Spencer asked appellant if appellant and his father had gotten into a fight. In response, appellant "kind of nodded his head towards his yard and said: Your victim's over there." At that point, Spencer had not seen appellant's father,

2

Ricardo Ortiz. Spencer asked appellant, "Did you hit your dad or use a stick or anything like that?" Appellant replied that he had used his fists and then yelled that "God gave me these fists for a reason." Spencer stated that at this time, appellant was standing beside him in the street and had not been placed on the ground or in a patrol car, and Spencer had not drawn his firearm or shone a light in appellant's eyes.

Meanwhile, a third officer had arrived on the scene, located appellant's father nearby, and was calling for Emergency Medical Services to hurry to the scene. When Spencer heard the stress in the other officer's voice, he decided to place appellant in the police vehicle. After seeing the victim's injuries and speaking with appellant's wife regarding what had transpired, Spencer placed appellant under arrest and transported him to jail. Spencer estimated that he asked his initial question of appellant within seconds of having detained him with the use of handcuffs, and their entire initial conversation lasted about 30 seconds.

On cross-examination, Spencer stated that when he first saw appellant in the middle of the street, he was not afraid of appellant but "was afraid [appellant] was going to fight." He additionally acknowledged that appellant was cooperative. Spencer stated that he had spoken with appellant "several times over the years" and "detained him to find out what was going on." Spencer did not give appellant *Miranda* warnings before asking him the initial questions recounted above. While being detained, appellant was not free to leave.

No other evidence was presented at the suppression hearing. The trial court denied appellant's motion to suppress the statements made to Spencer. In its findings of fact and conclusions of law, the trial court made several findings demonstrating a general acceptance of events as related by Officer Spencer and

3

concluded that appellant's statements were admissible.[1]

## *Discussion*

In his sole issue on appeal, appellant contends the trial court erred in denying his motion to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the court's determination of historical facts that are supported by the record and reviewing the court's application of the law to the facts de novo. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

Appellant specifically alleges that at the time he made his statements to Officer Spencer, he was not merely detained, but was under arrest without probable cause, a violation of the Fourth Amendment to the United States Constitution. He further asserts that even if his arrest was proper, Spencer failed to advise him of his *Miranda* rights before asking him questions, a violation of the Fifth Amendment.[2] Our analysis therefore turns to some degree on whether Spencer's handcuffing of appellant amounted to an arrest or was a mere detention. If Spencer's action amounted to no more than a detention, appellant does not dispute that the statements were admissible.

Caselaw segregates interactions among police officers and citizens into three categories for analysis: (1) consensual encounters, (2) investigative detentions, and (3) arrests or their custodial equivalent. *See Crain v. State*, 315 S.W.3d 43, 49

---

[1] After his arrest, a detective obtained a videotaped statement from appellant. The trial court, however, denied admission of the videotape at trial.

[2] The warnings set out by the United States Supreme Court in *Miranda v. Arizona* were established to safeguard an unrepresented individual's constitutional privilege against self-incrimination during custodial interrogation. 384 U.S. 436, 442-57, 467-79 (1966). Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief. *Id*. at 444.

4

(Tex. Crim. App. 2010). Both detention and arrest involve a restraint on one's freedom of movement; the difference is in the degree. *State v. Sheppard*, 271 S.W.3d 281, 290-91 (Tex. Crim. App. 2008). An arrest places a greater degree of restraint on an individual's freedom of movement than does an investigative detention. *Id*. at 290. The mere act of handcuffing, as was done here, does not establish custody, but is only one of a range of relevant factors in determining that a suspect is in custody. *See State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012); *see also Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (holding investigative detention did not evolve into an arrest simply because officer handcuffed defendant).

When considering whether a person is in "custody" for *Miranda* purposes, we apply a "reasonable person" standard, *i.e.*, "[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The inquiry requires an examination of all of the objective circumstances surrounding the questioning at issue. *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). The subjective belief of law enforcement officials about whether a person is a suspect does not factor into the custody determination unless an official's subjective belief was somehow conveyed to the person who was questioned. *Id*. at 525-26. The defendant bears the initial burden of demonstrating that a statement was the product of custodial interrogation, and the State has no burden to show compliance with *Miranda* until the defendant meets that initial burden. *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005).

Several factors often come into play in considering whether a particular encounter amounted to an arrest or detention, including the amount of force

5

displayed, the duration of detention, the efficiency of the investigative process, and whether it was conducted at the original location or the person is transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) (citing 40 George E. Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 7.34 (2d ed. 2001)). "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." *Id*. (quoting Dix & Dawson § 7.34).

Appellant asserts that he was in custody for *Miranda* purposes once Officer Spencer handcuffed him. Appellant emphasizes that at the time, he was being compliant, Spencer had a backup officer present, and Spencer's actions indicated a clear intent to arrest. We disagree with appellant's conclusion.

According to Spencer's testimony, when he arrived on the scene and observed appellant walking in the middle of the street toward officers, Spencer did not have enough information regarding the reported disturbance to make an arrest. Spencer was aware, however, that appellant was reportedly involved in an altercation and had previously assaulted a police sergeant. Spencer also observed that appellant's hands were clenched into fists. Spencer expressed concern that appellant intended to fight the officers. Based on this testimony, it would have been reasonable to conclude that Spencer initially handcuffed appellant to temporarily detain him for officer safety while the cause of the disturbance report, and appellant's possible involvement therein, were ascertained. Moreover, there is no evidence Spencer used any force on appellant beyond the application of the handcuffs, and according to Spencer, the period of time between his use of the

6

handcuffs and appellant's statements was mere seconds. Lastly, Spencer indicated to appellant that appellant was not under arrest at that time but was only being detained until the officers could figure out what had happened.

Based on Spencer's testimony—the only evidence adduced at the suppression hearing—the trial court did not err in finding that appellant was merely detained and not under arrest or in custody and thus was not entitled to be given *Miranda* warnings before answering questions. The trial court consequently did not err in denying the motion to suppress those statements. We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
        Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison (Frost, C.J., concurring).
Publish — TEX. R. APP. P. 47.2(b).