Erik KUETHER, Appellant

v.

The STATE of Texas, Appellee

NO. 14–15–00357–CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion Filed April 18, 2017

Rehearing Overruled May 16, 2017

Discretionary Review Refused
August 23, 2017

Tyler Flood, Matthew DeLuca, Houston, TX, for Appellant.

Dan McCrory, Houston, TX, for State.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Martha Hill Jamison, Justice

In two issues, appellant Erik Kuether challenges his driving while intoxicated

(DWI) conviction. He complains that the State failed to disclose purportedly exculpatory evidence prior to trial. He also contends that the trial court erred in admitting his statements made before he was given *Miranda* warnings.[1] Concluding that appellant has not shown prejudice from the State's untimely disclosure of evidence and that the challenged statements were not made pursuant to custodial interrogation, we affirm.

### Background

A woman and her cousin were driving home from Christmas shopping one evening in Houston, Texas, when the woman's car was struck on the driver's side door by a dark colored truck, causing the woman's car to spin several times before coming to rest on the highway. Officer Gonzales was dispatched to the scene and located an unoccupied black Ford F150 truck off the highway on a grassy area near some woods. The truck was damaged on its front-end passenger side. There were no other vehicles in the area.

Officer Fortson, a member of Houston Police Department's DWI task force, arrived on the scene. Based on the damage to the F150, Fortson concluded that it had struck the woman's car. Fortson searched the F150 and found a picture identification belonging to appellant inside.[2]

A K9 unit was summoned to search for the driver of the F150. Officer Hanley arrived with his dog, Tyson. Tyson was trained to detect human scent. He led Hanley "[s]traight into the wood line." Tyson alerted to the scent of a person in the woods. The woods were too dense for officers to get inside. Hanley called for a helicopter.

The helicopter was equipped with infrared radar. Someone in the helicopter verified that a person was in the woods and directed the officers on the ground to the easiest route to the suspect. Hanley located appellant stuck in a "bush loaded with stickers." Officers extricated appellant from the bushes, handcuffed him, and put him in the backseat of a patrol car.

Fortson approached appellant while he was in handcuffs. He was wearing one shoe, and Fortson noticed that appellant smelled like alcohol, slurred his speech, had red, glassy eyes, and was unsteady on his feet. In response to Fortson's questions, appellant told Fortson that his other shoe was in the woods, he ran because he had been drinking and was scared, and he had been driving the F150. At that point, Fortson decided to take appellant to the HPD "Central Intox" station to conduct sobriety testing.

When they arrived at Central Intox, Fortson read appellant his *Miranda* warnings and administered three sobriety tests: horizontal gaze and nystagmus (HGN), one-leg stand, and walk-and-turn. Appellant displayed six of six clues of intoxication on the HGN text, no clues on the one-leg stand test, and five of eight clues on the walk-and-turn test.

Fortson also obtained a search warrant to draw appellant's blood. A blood test revealed that appellant's blood alcohol concentration (BAC) was .12, which is above the legal limit of .08. At trial, the State's expert testified that she could not deter-

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (prohibiting use of oral statement of accused made as result of custodial interrogation unless certain warnings are given and accused

knowingly, intelligently, and voluntarily waives rights).

2. Fortson also determined that the vehicle was registered to a Robert Kuether.

mine what appellant's BAC had been at the time he was driving.

After finding appellant guilty of DWI, the jury assessed punishment at one year of community supervision.

### *Discussion*

In his first issue, appellant asserts that he was unconstitutionally deprived of due process because the State did not disclose that a witness had changed his statement until after trial began. We conclude that appellant did not establish he was prejudiced by the State's delay.

In his second issue, appellant challenges the trial court's admission of statements appellant made at the scene of the collision that he contends were admitted in violation of his constitutional right against self-incrimination under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and his right to statutory warnings under article 38.22 of the Texas Code of Criminal Procedure. We conclude appellant was not in custody for purposes of *Miranda* during the relevant timeframe and appellant waived his article 38.22 argument.

### I. No Showing that State's Delay in Disclosing Evidence Resulted in Prejudice

■ Appellant complains that the State did not inform him until after trial began

that a witness had changed his statement regarding appellant's identity as the driver of the F150 and appellant's demeanor and behavior after the collision.[3] Appellant contends the State's untimely disclosure of this information deprived him of due process under the United States Constitution.

■ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. In this connection, to establish a violation under *Brady*, a defendant generally must show that the State failed to disclose material evidence that was favorable to the defendant, regardless of the prosecutor's good or bad faith. *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). But when, as here, evidence favorable to the defendant is disclosed in an untimely manner, an appellant bears the initial burden to show that the delay resulted in prejudice.[4] *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To show prejudice, appellant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different.[5] *Id.* We conclude that ap-

---

3. The State did not call the witness to testify at trial.

4. We presume for purposes of our analysis that the withheld information was favorable to the appellant.

5. The remedy for a *Brady* violation is a new trial. *Miles*, 359 S.W.3d at 664. Appellant's counsel moved for a continuance of trial, which the trial court denied, and then moved for a mistrial, which the trial court also denied. Appellant's requesting a continuance and obtaining a ruling preserved error on his

*Brady* complaint. *See Pena v. State*, 353 S.W.3d 797, 807–809 (Tex. Crim. App. 2011) (holding that defendant preserved error on his *Brady* complaint raised after "grounds for an objection ... bec[a]me apparent" and "the trial court and the State were both aware of the purported error"); *Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003) (noting defendant generally is required to request a continuance to preserve error on *Brady* complaint), *aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005).

pellant has not made such a showing under these circumstances.

Here, Fortson signed a search warrant affidavit to obtain appellant's blood specimen. She attested that she spoke with witness Jason Nguyen, who saw the driver of the F150. Nguyen said that he asked the driver to "stay on scene, but the driver stated . . . he was intoxicated and then ran into the brush." With the help of the K9 unit and HPD helicopter, Fortson and the other officers subsequently located appellant hiding in the woods.

As noted in the State's file, an intern from the prosecutor's office called Nguyen in February 2014. Nguyen told the intern that he witnessed the collision, spoke with appellant while appellant was in the woods, and told appellant to come out. Appellant said he needed help. Nguyen said he could not help and proceeded to tell "the officer" what he saw. In June 2014, also noted in the State's file, a prosecutor spoke with Nguyen. Nguyen said he did not see appellant's face but viewed the collision and identified the person "in the woods that he was talking to as the driver of the vehicle." The person indicated "that he messed up." These notes in the State's file were contemporaneously available to appellant.

In January 2015, Nguyen had a change of heart and told the trial prosecutor that he did not remember the incident, did not want to testify, and did not recall anything he told officers. These statements were not disclosed to defense counsel until after trial began.

Appellant argues that Nguyen's latest statement "called into question the credibility and reliability of [Nguyen], the information relied on by the officers, and even the officers' own statements." But appellant does not demonstrate a reasonable probability that his learning of this statement at an earlier juncture would have resulted in a different trial outcome. Even if the State or appellant had requested a trial subpoena and Nguyen had appeared at trial, appellant has not demonstrated what evidence he would have elicited from Nguyen. According to Forston, Nguyen initially identified appellant as the driver of the F150 and stated that appellant was intoxicated. But the State presented ample evidence that officers would have identified and apprehended appellant without Nguyen's help.[6] Attacking Nguyen's credibility and the fact that officers had relied on his statements would not have changed this fact.

Additionally, Nguyen's latest statement does not contradict any of the officers' statements. Nguyen merely said that he no longer remembered what happened. Appellant has not shown how this evidence, if presented at trial, could have resulted in a different outcome.

Appellant further contends that Nguyen's latest statement contradicts his earlier statement to Fortson that she relied on in her search warrant affidavit, thus casting doubt on the reliability of that information. As discussed, the statements are not contradictory. Even if they were, certainly at the time Fortson signed her affidavit, Nguyen had not changed his story, so

---

**6.** Officers found a photo identification belonging to appellant in the truck. Tyson alerted to the scent of a person in the woods, someone in the helicopter directed officers to a person there, officers apprehended appellant, and appellant admitted that he had been driving the F150. Appellant was the only person found in the woods. Appellant admitted to Fortson that he had been drinking and driving; Fortson observed that appellant had lost a shoe, smelled like alcohol, slurred his speech, had red, glassy eyes, and was unsteady on his feet; and appellant displayed many of the clues of intoxication on his sobriety tests and had a blood alcohol content of .12, which is well above the legal limit of .08.

appellant has not demonstrated how presenting this information at trial could effect a different outcome.

We conclude that appellant has not shown a reasonable probability that earlier disclosure of Nguyen's changed statement would have resulted in a different trial outcome. We overrule appellant's first issue.

## II. Statements Not Made as a Result of Custodial Interrogation under *Miranda*

Appellant also challenges the trial court's admission of statements appellant made at the scene of the collision on the grounds that appellant did not receive *Miranda* warnings or statutory warnings under article 38.22 of the Texas Code of Criminal Procedure while he was in custody.

■ The warnings set out by the United States Supreme Court in *Miranda* were established to safeguard an unrepresented individual's Fifth Amendment privilege against self-incrimination during custodial interrogation. 384 U.S. at 442–57, 467–79, 86 S.Ct. 1602; *see also Ortiz v. State*, 421 S.W.3d 887, 890 n.2 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *Ortiz*, 421 S.W.3d at 890 & n.2.

Code of Criminal Procedure article 38.22, section 3, similarly requires that the accused be given statutory warnings "and the accused knowingly, intelligently, and voluntarily waive[ ] any rights set out in the warning[s]" before oral statements

made during custodial interrogation are admissible as evidence at trial.[7] Tex. Code Crim. Proc. art. 38.22 § 3(a).

### A. Article 38.22 Issue Not Preserved for Appellate Review

We first must determine which, if either, of appellant's arguments were preserved for appellate review.

Fortson testified regarding the following statements made by appellant on the scene:

> Yeah, the first thing I noticed was he only had one shoe on. So I asked him where his other shoe was, and he said it was in the woods. And I asked him why he ran. And he said he was scared. And I was, like, "Why are you scared?" And he said he had been drinking.

Defense counsel did not object to this testimony.

The prosecutor later asked Fortson, "[D]id you believe that [appellant] had been operating that truck?" to which Fortson replied, "Yes. He told me he had." At that point, defense counsel objected to Fortson's statement "[h]e told me he had" on the basis that it was "a custodial interrogation."

The trial court then held a hearing outside the presence of the jury. Defense counsel examined Fortson, and she testified as follows:

> [Q:] Did you refresh your offense report [sic] before testifying here today?
>
> [A:] Yes, right here.
>
> [Q:] And you're aware that after—it says you took the defendant into custody, right? And then you wrote, "He admitted to being the driver of the F150"?
>
> [A:] Yes.

---

7. The warnings and statement also must be recorded. Tex. Code Crim. Proc. art. 38.22, § 3(a)(1).

[Q:] Okay. In that order, right?

[A:] Yes.

[Q:] Okay. So he was in custody, and you're saying that he just blurted it out, just volunteered that information?

[A:] No. I had asked him questions, Captain Campbell asked him questions; and based on all of his answers, decided to take him down for his field sobriety testing.

[Q:] So you asked him questions and he admitted that he was the driver?

[A:] Yes.

[Q:] And you had read him his *Miranda* at that time?

[A:] No. He was detained at that time.

On redirect, defense counsel asked Fortson further questions about whether appellant was in custody. Defense counsel objected to her testimony as follows: "It's a custodial interrogation." The trial court overruled the objection.

After the jury reentered the courtroom, Fortson testified that she asked appellant if he had been operating the F150. The prosecutor then asked Fortson if she had asked appellant "if he consumed any alcoholic beverage" and what he said. Defense counsel objected on the basis that it was "a custodial interrogation where *Miranda* ha[d] not been read." The trial court overruled the objection, and Fortson testified that appellant told her he had drunk "[b]eer and Jager shots."[8] Fortson testified that she placed appellant under arrest after he admitted that he had operated the F150 and had been drinking.

Under rule 33.1(a) of the Texas Rules of Appellate Procedure, a party does not preserve a complaint for appeal unless such complaint is made to the trial court "by a timely request, objection or motion" that states the grounds for the ruling sought from the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context." Tex. R. App. P. 33.1(a); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Likewise, Rule 103 of the Texas Rules of Evidence provides that error may not be predicated upon a ruling that admits evidence unless the party "timely objects or moves to strike" and "states the specific ground, unless it was apparent from the context." Tex. R. Evid. 103; *Resendez*, 306 S.W.3d at 312.

We require a specific objection in the trial court to inform the trial judge of the basis of the objection and give him or her the opportunity to rule on it and to give opposing counsel the opportunity to respond to the complaint. *Resendez*, 306 S.W.3d at 313. Although technical considerations or forms of words are not required to preserve an error for appeal, a party must be specific enough to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 312–13. The parties, not the judge, are responsible for the correct application of evidentiary rules: to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention. *Id.* at 313.

We do not consider only the specific complaint in question; we also look at the context. *Id.* When the correct ground for exclusion was obvious to the

---

8. As noted, Fortson's earlier testimony that appellant stated he had been drinking had been admitted earlier without objection, but the details of what appellant had been drinking had not.

judge and opposing counsel, forfeiture will not result from a general or imprecise objection. *Id.* But when the context shows that a party failed to communicate his or her argument effectively, then we deem the error to be forfeited on appeal. *Id.*

■■■■ Appellant's counsel did not bring his specific article 38.22 argument to the trial court's attention. He complained only that appellant was subjected to custodial interrogation without having received *Miranda* warnings. Viewing the record in context, it is apparent that appellant was complaining only that his constitutional rights under *Miranda* had been violated and was not making a claim based on article 38.22. *See id.* at 313, 315–16 (involving article 38.22's recording requirement). The trial court did not have a fair opportunity to rule on a specific article 38.22 complaint, and the State did not have a fair opportunity to oppose such a complaint. *See id.* Accordingly, we conclude that appellant preserved for review only his complaint that he was deprived of his Fifth Amendment privilege against self-incrimination during custodial interrogation under *Miranda. See id.* We address that issue only.[9]

## B. Not "in Custody" for Purposes of *Miranda*

■■■ Appellant contends that statements he made after being handcuffed and placed in the patrol car but before being transported to Central Intox should have been excluded because he was "in custody" for purposes of *Miranda.*

■■■■ A trial judge's ultimate custody determination presents a mixed question of law and fact. *Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id.* at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial court's custody determination de novo. *Id.* at 527. When a trial court denies a motion to suppress and does not enter findings of fact, we review the evidence in the light most favorable to the trial court's ruling, and we assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.[10] *Id.*

■■■■ Case law segregates interactions between police officers and citizens into three categories: consensual encounters, investigative detentions, and arrests or their custodial equivalent. *Ortiz,* 421 S.W.3d at 890 (citing *Crain v. State,* 315 S.W.3d 43, 49 (Tex. Crim. App. 2010)). Both detention and arrest involve a restraint on one's freedom of movement: the difference is in the degree. *Id.* (citing *State*

9. We note that "custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda. Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). But appellant was still required to preserve his article 38.22 complaint for appellate review. *See Resendez,* 306 S.W.3d at 313. Appellant also argues that because he did not receive the article 38.22 warning, his statements should have been suppressed under article 38.23. Tex. Code Crim. Proc. art. 38.23. This related argument, similarly, was not raised in the trial court and was not preserved for appellate review.

10. We note that appellant's counsel did not move to suppress appellant's statements and only objected to their admissibility, but a motion to suppress is simply a specialized objection to the admissibility of evidence. *See Porath v. State,* 148 S.W.3d 402, 413 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Accordingly, we shall apply the same standard of review to the trial court's custody determination as if appellant had moved to suppress the statements.

v. Sheppard, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008)). An arrest places a greater degree of restraint on an individual's freedom of movement than does an investigative detention. Id. Persons temporarily detained for purposes of investigation are not "in custody" for Miranda purposes, and thus the right to Miranda warnings is not triggered during an investigative detention. Hauer v. State, 466 S.W.3d 886, 893 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and State v. Stevenson, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997)).

 When considering whether a person is in custody for Miranda purposes, we apply a "reasonable person" standard, i.e., "[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); Ortiz, 421 S.W.3d at 890. The inquiry requires an examination of all of the objective circumstances surrounding the questioning at issue. Herrera, 241 S.W.3d at 525. The subjective belief of law enforcement officials about whether a person is a suspect does not factor into the custody determination unless an official's subjective belief was somehow conveyed to the person who was questioned. Id. at 525–26.

 In assessing the circumstances, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. Rhodes v. State, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). We therefore look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. Id. In this regard, officers may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. Id. at 117. Accordingly, the mere act of handcuffing, as was done here, does not establish custody, but is only one of a range of relevant factors in determining that a suspect is in custody. Ortiz, 421 S.W.3d at 890.

 Several factors often come into play in considering whether a particular encounter amounted to an arrest or detention, including the amount of force displayed, the duration of detention, the efficiency of the investigative process and whether it was conducted at the original location or the person was transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. Sheppard, 271 S.W.3d at 291. "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." Id.

With these standards in mind, we must examine the facts of this case to determine whether appellant was temporarily detained or under arrest at the time he made the challenged statements. See Hauer, 466 S.W.3d at 893.

The facts of this case suggest that appellant was not "in custody" for Miranda purposes. Officer Gonzales arrived first on the scene. He testified that once appellant was apprehended, he was handcuffed and escorted out of the woods. According to Gonzales, appellant was not arrested at that point but was merely being detained as a suspect for failing to stop and give information.

Officer Fortson waited by the freeway until appellant was taken to the patrol car. Fortson then approached appellant in the patrol car. According to Fortson, appellant was being detained at that point to determine whether he had been the only person in the truck and why he fled the scene.[11]

Fortson testified it was "standard practice" to put someone in appellant's situation in handcuffs during an investigative detention. She stated,

> Putting somebody in handcuffs does not mean they are under arrest. It's very standard practice for us. When I transport someone for courtesy right [sic], they are put in handcuffs. Anytime they go into the back seat they are put in handcuffs. He was put in handcuffs by the other officers once they pulled him out of the bushes so he couldn't go anywhere.

Fortson asked appellant why he fled into the woods, and he responded that he was scared because he had been drinking.[12] Even at that point, Fortson testified that she had not determined whether appellant had been too impaired to drive when the collision occurred. Fortson decided to take appellant to Central Intox only after he admitted that he had operated the F150 and had been drinking. Once they arrived at Central Intox, Fortson read appellant his *Miranda* rights.

Applying the factors referenced above, we conclude that appellant was being detained when he made statements to Fortson. Officers did not use an undue amount of force to apprehend or hold appellant. The record reflects that once the officers located appellant, they helped him get out of the woods and handcuffed him to assure his presence during the investigation. Although the record does not show the exact duration of the detention, officer testimony indicates that as soon as appellant was apprehended, he was escorted to the patrol car, and Fortson approached him shortly thereafter. After observing appellant and conducting a short investigation on the scene, Fortson decided to take appellant to Central Intox for sobriety testing. Once they arrived, Fortson gave appellant the *Miranda* warnings. Given the totality of the circumstances, it was reasonable for the trial court to conclude that appellant was temporarily detained for the purpose of conducting a DWI investigation and was not in custody for purposes of *Miranda.* See *Sheppard*, 271 S.W.3d at 291; see also *Hauer*, 466 S.W.3d at 891–92. We overrule appellant's second issue.

### Conclusion

Having concluded that the State's untimely disclosure of evidence was not prejudicial and that appellant was not in custody for purposes of *Miranda* when he made the challenged statements, we affirm the judgment of the trial court.

---

11. Appellant argues that he was under arrest at that point for failure to stop and give information, but Fortson testified that she had not made the determination to arrest appellant for anything before speaking with him. We defer to the trial court, as the factfinder, for its credibility determinations. *See Herrera*, 241 S.W.3d at 526–27.

12. Appellant's counsel did not object to this testimony.