

# NUMBER 13-20-00114-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                                Appellant,

v.

MAYRA LUNA,                                                                          Appellee.

## On appeal from the County Court at Law No. 3
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

This case arises from appellee Mayra Luna's[1] arrest for driving while intoxicated

(DWI), a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04. By two issues,

---

[1] Although most of the appellate record and the briefs spell Luna's first name as "Myra," the final judgment spells her first name as "Mayra." Accordingly, we use the spelling reflected in the order being appealed in this opinion.

appellant, the State of Texas, argues (1) the trial court abused its discretion in granting Luna's motion to suppress and (2) Luna's subsequent "oral acceptance" of DWI and *Miranda* warnings purged any taint of an illegal arrest. We affirm.

## I. BACKGROUND

On January 6, 2019, Trooper Orlando Rivera with the Texas Department of Public Safety was traveling northbound on Highway 77 when he noticed a vehicle enter the highway ahead of him at a rapid speed. Rivera activated his front radar and confirmed that the vehicle at issue was traveling at 82 miles per hour. Rivera pursued the vehicle to make a traffic stop. The vehicle continued to drive for several minutes and passed several safe places to stop before it eventually stopped at an improved shoulder with a grassy area.

Rivera made contact with the driver, Luna, and asked her to step out of her vehicle. Luna complied. Rivera noted that even though Luna was chewing on a large wad of gum, he could smell alcohol on her breath. Rivera asked Luna if she had consumed any alcoholic beverages and she admitted she had had two beers at a local restaurant. Rivera asked Luna if she had any medical conditions he should know about; Luna replied that other than wearing contacts, no. Rivera then proceeded to conduct a DWI investigation by performing standardized field sobriety tests (SFSTs).

The first test Rivera performed was the horizontal gaze nystagmus (HGN). As he was performing this test, Rivera noted that the right front passenger in Luna's vehicle, identified on the dash camera video as Luna's boyfriend, exited the vehicle. Rivera asked the boyfriend to get back into the car. At this moment, Luna started to reach into her left

2

pocket with her left hand. Luna claims she was reaching for her phone, but Rivera saw that she had her phone in her right hand. Rivera stated that he was nervous because the boyfriend had exited the vehicle, and he did not know what Luna was reaching for. Rivera kept asking what Luna was reaching for in her pocket and she consistently yelled, "It's my phone! It's my phone!" According to the video, Rivera then put his hands on Luna's hands, announced, "You're under arrest, ma'am—turn around and put your hands behind your back," handcuffed her, and moved her to the side of his unit. Luna asked Rivera to search her, insistent that she had no contraband, but Rivera replied that he could not search her because he is a male. Rivera called in for a female back-up and explained to Luna, "you're being detained right now."

Luna leaned along the side of Rivera's patrol unit, handcuffed, for about eight minutes until a female trooper arrived to search her. The search revealed nothing. At this point, Rivera removed Luna's handcuffs and explained that she did not keep her hands out of her pockets "and that's why [she was] being detained." Rivera performed the remaining SFSTs and subsequently "re"-arrested Luna for DWI. He also read her the *Miranda* warnings at this time, and she agreed to submit to a breath test.

At the hearing on the motion to suppress, Rivera testified as follows during his cross-examination with Luna's attorney:

Q.     You said you arrested her. You completed an arrest; and you put her in your vehicle, correct?

A.     I stated, yes, that she was under arrest; but I retracted that. I told her I did make a mistake, and she was detained until the female officer came in to—

Q.     Are you a magistrate? Are you a judge?

3

A.    No, sir.

Q.    How do you unarrest somebody? How do you say, "I made a mistake. You're unarrested"? You're a trooper. You're not a magistrate. Once you arrest someone, the only person that can make that determination on probable cause is a magistrate, correct?

A.    Yes, sir.

Q.    And you're not a magistrate, are you?

A.    No, sir.

Q.    So you can't unarrest somebody, can you?

A.    No, sir.

The trial court granted the motion to suppress and issued the following findings of fact and conclusions of law:

1.    All evidence obtained by the State of Texas after the initial arrest by Trooper Rivera is inadmissible at trial.

2.    The initial "Arrest" was an Arrest, as defined by the United States Supreme Court in *K[au]pp v. Texas*, 538 U.S. 626 (2003), and not a detention. Trooper Rivera did not issue *Miranda* warnings to [Luna] as required by the United States Constitution.

3.    All evidence gathered by the State of Texas after the initial arrest is "fruit of the poisonous tree" under Texas Rules of Criminal Procedure 38.23, Texas Exclusionary Rule. As such, that evidence is inadmissible at trial.

4.    Trooper Rivera can be seen on video, telling [Luna] she is "under arrest." Trooper Rivera forcefully handcuffs [Luna] and places her in his squad car. He then radios another Trooper to the scene to search [Luna's] pockets. After nothing is found on [Luna], the Trooper places [Luna] back on the side of the road and continues field sobriety testing.

5.    It is ORDERED, that all evidence obtained by the State of Texas after the initial arrest is inadmissible at trial.

4

The State appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II. MOTION TO SUPPRESS

By its first issue, the State argues that the trial court abused its discretion when it granted Luna's motion to suppress.

## A. Standard of Review and Applicable Law

"We review a motion to suppress under a bifurcated standard of review." *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019) (citing *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010)). We give almost total deference to the trial court's findings of fact and review *de novo* the application of the law to the facts. *Id*. "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *Martin v. State*, PD-0563-19, ___ S.W.3d. ___ , 2021 WL 1396413, at *5 (Tex. Crim. App. Apr. 14, 2021) (citing *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017)).

At issue here is whether Luna was placed under arrest when she was reaching for her phone or whether she was being detained. "Both detention and arrest involve a restraint on one's freedom of movement; the difference is in the degree." *Ortiz v. State*, 421 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *State v. Sheppard,* 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008)). An arrest places a greater degree of restraint on an individual's freedom of movement than does an investigative detention. *Sheppard*, 271 S.W.3d at 290.

When considering whether a person is arrested or in "custody" for *Miranda*

purposes, we apply a "reasonable person" standard. *Ortiz*, 421 S.W.3d at 890; *see Miranda v. Arizona*, 84 U.S. 436 (1966). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). This inquiry requires an examination of all of the objective circumstances surrounding the event at issue. *See Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). The subjective belief of law enforcement officials about whether a person is a suspect does not factor into the custody determination unless an official's subjective belief was somehow conveyed to the person who was questioned. *Id.* at 525–26.

Several factors often come into play in considering whether a particular encounter amounted to an arrest or detention. *Ortiz*, 421 S.W.3d at 890. The mere act of handcuffing, as was done here, does not establish custody, but is only one of several relevant factors to consider when determining if a suspect was in custody. *See State v. Ortiz,* 382 S.W.3d 367, 374 (Tex. Crim. App. 2012); *see also Balentine v. State,* 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (holding that an investigative detention did not evolve into an arrest simply because the officer handcuffed the defendant). Other factors to determine whether an arrest occurred include: (1) the amount of force displayed, (2) the duration of detention, (3) the efficiency of the investigative process, (4) whether the investigation was conducted at the original location or the person is transported to another location, and (5) whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *See Sheppard*, 271

6

S.W.3d at 291. "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." *Id.*

## B.     Analysis

Here, the trial court found that "[t]he initial '[a]rrest' was an [a]rrest, as defined by the United States Supreme Court in *K[au]pp v. Texas*, 538 U.S. 626 (2003), and not a detention." Examining the record in the light most favorable to the ruling, as we must, we conclude that the trial court's fact findings are supported by the record. *See Martin*, ___ S.W.3d. ___ , 2021 WL 1396413, at *5. First and foremost, Rivera told Luna, "You're under arrest, ma'am—turn around and put your hands behind your back." Second, Rivera handcuffed Luna. Third, Luna waited against Rivera's patrol unit, restrained, for approximately eight to ten minutes until a female officer arrived at the scene to search her. Rivera also acknowledged on cross-examination that after arresting someone, he did not have the authority to "unarrest" someone. While it appears that Rivera did not use a great amount of force when he placed his hands over Luna's hands to stop her from reaching into her pocket, and that Rivera later told Luna that she was being "detained," we conclude that a reasonable person would consider that their "freedom of movement was restrained to the degree associated with a formal arrest." *See Dowthitt,* 931 S.W.2d at 254. Giving the trial court almost total deference on this finding that an arrest occurred, we overrule this issue. *Ruiz,* 577 S.W.3d at 545.

## III. PURGING THE TAINT OF ILLEGAL ARREST

By its second issue, the State argues in the alternative that if this Court concludes

7

that an arrest occurred, Luna's subsequent "acknowledgment and oral acceptance" of the statutory DWI and *Miranda* warnings, along with her agreement to take a breath test, purged the taint of any irregularities with the status of the evidence.

The State, however, cites authority regarding whether confessions given freely can "purge any taint of an illegal arrest." *See Monge v. State*, 315 S.W.3d 35, 41 (Tex. Crim. App. 2010); *Weems v. State*, 167 S.W.3d 350, 359–61 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). These cases discuss whether temporal proximity and intervening circumstances can cause a break in the causal connection between an illegal arrest and the confession, such that the confession is an act of free will to purge the initial taint. *See Monge*, 315 S.W.3d at 41; *Weems*, 167 S.W.3d at 359–61. We find these cases inapposite, though, because Luna gave no confession here. *See* TEX. R. APP. P. 38.1(i) (noting that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities" . . . .). Rather, Luna's "acknowledgment and oral acceptance" of the DWI and *Miranda* warnings she received at the end of her SFSTs appear to be "a mere submission to a claim of lawful authority." *Kaupp*, 538 U.S. at 631. We overrule this issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
3rd day of June, 2021.

8