**Opinion filed May 29, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00269-CR

_____

**RENE LUNA SAENZ, JR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-19-0404-CR**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Appellant, Rene Luna Saenz, Jr, of the offense of possession of methamphetamine in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West Supp. 2025). The jury then found the habitual offender enhancement allegations to be "true" and assessed Appellant's punishment at thirty

years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. In one issue, Appellant asserts that the trial court erred by denying his motion to suppress. We affirm.

## I. *Factual and Procedural History*

Appellant was indicted on April 2, 2019, for the offense of possession of a controlled substance, namely, methamphetamine. In a written pretrial motion to suppress, Appellant argued that the stop of his vehicle and subsequent search of his person were unlawful. Appellant further sought to suppress his statements and the results of the search.

At the hearing on Appellant's motion to suppress, Ector County Sherrif's Office Investigator Mark Luna testified that he had been conducting surveillance on the night of October 10, 2018. Investigator Luna was in an unmarked vehicle and wearing plain clothes at the time. At approximately 10:00 p.m., Investigator Luna witnessed a vehicle pull out of the surveillance area. Investigator Luna testified that he followed the vehicle for approximately fifteen minutes until he witnessed the driver commit two traffic violations, after which he initiated a traffic stop. Investigator Luna observed that the driver drove the vehicle without a functioning license plate light and that he had failed to maintain a single marked lane.

Appellant was identified as the driver of the vehicle but when he could not produce a driver's license or identification, he was asked to exit the vehicle. According to Investigator Luna, Appellant was "acting real[ly] nervous" and kept "trying to reach into his pockets." Investigator Luna noted that Appellant's speech was rapid and rambling. When Investigator Luna asked Appellant if he had anything illegal inside the vehicle, Appellant stated that he had marihuana. Appellant then provided his consent for Investigator Luna to search him. In the search, Investigator

2

Luna retrieved a "little baggy" containing a "crystal-like substance" from Appellant's front left pocket. Investigator Luna testified that as he removed the baggy from Appellant's pocket, Appellant blurted, "I forgot that meth was in my pocket." Investigator Luna then handcuffed Appellant, and while in handcuffs, Appellant—without provocation—expressed a willingness to provide information on other drug suppliers. Investigator Luna testified that he released Appellant with instructions to contact the agency in order to cooperate in the investigation. At no point was Appellant *Mirandized* that night. Two weeks later, when Appellant failed to contact the agency as promised, an arrest warrant was issued.

At the hearing on the motion to suppress, Appellant argued that once he was removed from his vehicle, a reasonable person would not believe they were free to leave, and he challenged the officer's intent in conducting the stop. The State responded that: (1) the officer's subjective intent was irrelevant because the stop was initiated over observed traffic violations; (2) during the course of the stop, Investigator Luna developed reasonable suspicion that criminal activity was ongoing; and (3) any incriminating statements made by Appellant had been volunteered. The trial court denied Appellant's motion to suppress. Following a jury trial, Appellant was found guilty and sentenced to thirty years' imprisonment.

## II. *Motion to Suppress*

In his sole issue, Appellant argues that the trial court erred by denying his motion to suppress and admitting evidence obtained from a custodial interrogation. He contends that he was entitled to the warnings required by *Miranda*, and that all evidence obtained in violation of *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure should have been excluded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2025); *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

A. *Standard of Review*

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* "We review *de novo* a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id.* "The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it." *Id.* When, as here, the record is silent as to the reasons for the trial court's ruling, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Kuether v. State*, 523 S.W.3d 798, 807 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

B. *Lawful Stop*

In his motion to suppress, Appellant challenged the lawfulness of his stop in addition to the subsequent seizure and search. To the extent Appellant means to continue this challenge on appeal, the existence of reasonable suspicion permitted Investigator Luna's initial temporary detention of Appellant. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) ("An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied.").

"Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 548

4

(Tex. Crim. App. 2013)).  The reasonable-suspicion standard requires only "some minimal level of objective justification" for the stop.  *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)).  This is an objective inquiry that disregards the subjective intent of the officer and looks, instead, to whether an objectively justifiable basis for the detention existed.  *Monjaras v. State*, 664 S.W.3d 921, 927 (Tex. Crim. App. 2022); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).  A traffic stop may be conducted based on an officer's reasonable suspicion that a person has committed a traffic violation.  *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).

Investigator Luna testified that he performed a traffic stop after witnessing Appellant commit traffic violations: (1) Appellant was driving a vehicle without an illuminated license plate, and (2) Appellant failed to maintain a single marked lane. *See id.*  Investigator Luna further testified that he observed Appellant cross over a double yellow line, which divided the I-20 service road, more than once prior to him initiating the traffic stop.

Pursuant to Section 545.060(a) of the Texas Transportation Code, a driver "shall drive as nearly as practical entirely within a single lane" and may not move from that lane "unless that movement can be made safely" when operating a vehicle on a roadway divided into two or more clearly marked traffic lanes.  *See* TEX. TRANSP. CODE ANN. § 545.060(a) (West 2022).  Investigator Luna testified that Appellant's failure to maintain a single marked lane was not unsafe, but that he believed that to be a traffic violation. *See Daniel v. State*, 683 S.W.3d 777, 782 (Tex. Crim. App. 2024) (holding that "any enforcement of [Section] 545.060(a) before *Hardin*, judged under reasonable suspicion or probable cause standards, was objectively reasonable"); *Hardin*, 664 S.W.3d at 873–75 (a driver commits a

5

violation of Section 545.060 when the driver fails to maintain a single lane in an unsafe manner). The Transportation Code also requires that the rear license plate be illuminated by "[a] taillamp or a separate lamp" emitting a white light. *See id.* § 547.322(f). So here, it was objectively reasonable for Investigator Luna to believe that a traffic violation had been committed; Investigator Luna therefore had reasonable suspicion to stop Appellant's vehicle. *See Jaganathan*, 479 S.W.3d at 248; *Enriquez v. State*, No. 11-23-00133-CR, 2025 WL 1759009, at *3 (Tex. App.— Eastland June 26, 2025, pet. ref'd) (mem. op., not designated for publication) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop." (quoting *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982))); *see also McDowell v. State*, No. 11-16-00045-CR, 2018 WL 1320416, at *1, *3 (Tex. App.—Eastland Mar. 8, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding officer had reasonable suspicion to briefly detain appellant after observing appellant was parked on the wrong side of the street with his left brake light not illuminated).

### C. *Custodial Interrogation*

We now determine whether Appellant was in custody when he made incriminating statements after Investigator Luna effectuated the lawful traffic stop. "Custody is a mixed question of law and fact that does not turn on credibility and demeanor unless the witness testimony, if believed, would always decide the custody question." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021); *see State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We review de novo the ultimate legal determination of whether the person was in custody under those circumstances. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). If a suspect is in custody, any statements produced by custodial interrogation are inadmissible unless the accused is first provided the requisite warnings pursuant to

*Miranda* and Article 38.22. *Wexler*, 625 S.W.3d at 167; *see* CRIM. PROC. art. 38.22; *Miranda*, 384 U.S. at 479. In other words, a suspect must be in custody for the safeguards provided by *Miranda* and Article 38.22 to apply. *See* CRIM. PROC. art. 38.22, § 3 (providing that no oral statements of an accused "made as a result of custodial interrogation shall be admissible"); *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (providing that *Miranda* warnings safeguard an uncounseled individual's constitutional privilege against self-incrimination "during custodial interrogation"); *Boyce v. State*, No. 07-24-00080-CR, 2024 WL 4965674, at *3 (Tex. App.—Amarillo Dec. 3, 2024, pet. ref'd) (mem. op., not designated for publication) (observing the custodial requirement in *Miranda* and Article 38.22). Although Appellant characterizes his seizure as custodial in nature once Investigator Luna requested that he exit the vehicle, we disagree for reasons expounded on below.

"A custody determination requires two inquiries: the circumstances surrounding the interrogation and whether a reasonable person in those circumstances would have felt that [he] was not free to leave." *Wexler*, 625 S.W.3d at 167. Generally, routine traffic stops do not place a person in custody for purposes of *Miranda* and Article 38.22, even though a person temporarily detained pursuant to a traffic stop would not feel free to leave. *Id.* at 169; *see Berkemer v. McCarty*, 468 U.S. 420, 436–40 (1984); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). For a traffic stop to escalate from a non-custodial detention into a custodial detention, there must be a formal arrest or a detainee's freedom of movement must be restrained "to the degree associated with a formal arrest." *Ortiz*, 382 S.W.3d at 372 (quoting *Berkemer*, 468 U.S. at 440).

Courts consider several non-exhaustive factors in determining whether a detainee is in custody, including the amount of force displayed by officers, the duration of the detention, the efficiency of the investigative process and whether it

was conducted at the original location or the person was transported to another location, and whether the officer told the detained person that he was under arrest or was being detained only for a temporary investigation. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008); *Gameros v. State*, No. 11-19-00395-CR, 2021 WL 4998897, at \*3 (Tex. App.—Eastland Oct. 28, 2021, no pet.) (mem. op., not designated for publication). Moreover, an officer may continue questioning an individual regardless of whether the official tasks of a traffic stop have come to an end, provided that the officer has developed reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity. *Lerma v. State*, 543 S.W.3d 184, 191 (Tex. Crim. App. 2018).

Here, Appellant failed to produce his driver's license or identification and was asked to step out of his vehicle. At no point did Investigator Luna draw his weapon. *See Sheppard*, 271 S.W.3d at 291. According to Investigator Luna, Appellant appeared nervous, spoke rapidly, and was so garrulous that Investigator Luna struggled to get "any words in[]." Investigator Luna testified he also had to instruct Appellant not to reach into his pockets as Appellant kept attempting to do so. "Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors," including an officer's confirmation of a suspect's criminal history. *Hamal*, 390 S.W.3d at 308.

The record indicates that what transpired next did so soon after the stop, in the same location as the stop, and while Appellant was not in handcuffs—indicating that Appellant was not in custody. *See Sheppard*, 271 S.W.3d at 291; *see also, e.g.*, *Wexler*, 625 S.W.3d at 170 (concluding that court of appeals correctly held that appellant failed to show she was experiencing the functional equivalent of a formal arrest where her post traffic stop detention was short in duration, in a public setting,

and "she was not told that her detention would not be temporary"); *Gameros*, 2021 WL 4998897, at *3 (handcuffs do not always indicate that a person is in custody).

Investigator Luna confirmed Appellant's prior criminal history and inquired as to whether Appellant had anything illegal in his possession. Appellant responded that he had marihuana inside his vehicle. The disclosure prompted Investigator Luna to ask Appellant if he could search him, and Appellant consented.[1] Investigator Luna then withdrew the baggy from Appellant's front pocket, and Appellant volunteered that he had forgotten he had methamphetamine in his possession. Appellant was then placed in handcuffs and arrested.

"[V]olunteered statements are not barred by *Miranda*, even when the accused is in custody." *McKane v. State*, 726 S.W.3d 413, 424 (Tex. Crim. App. 2025) (quoting *Pugh v. State*, 624 S.W.3d 565, 568 (Tex. Crim. App. 2021)). Thus, not only did Investigator Luna's articulated observations provide him a rational basis to continue to query Appellant, Appellant's volunteered statements are outside the protectable scope of *Miranda* and Article 38.22. *See Lerma*, 543 S.W.3d at 190; *Kuether*, 523 S.W.3d at 808 ("Persons temporarily detained for purposes of investigation are not 'in custody' for *Miranda* purposes, and thus the right to *Miranda* warnings is not triggered during an investigative detention."). Moreover, Appellant was, in fact, handcuffed *after* making the statement conceding his methamphetamine possession.[2]

The trial court's implicit findings—that Investigator Luna had reasonable suspicion to stop Appellant, that Appellant was not in custody during his encounter with Investigator Luna until after the formal arrest and, that absent a custodial

[1]Appellant does not challenge the voluntariness of his consent.

[2]To the extent Appellant contends that his statement that he could "give [officers] more people that are selling, distributing methamphetamine" was made pursuant to a custodial interrogation, that statement was not introduced at trial. Indeed, the State conceded at the hearing that the statement was inadmissible.

9

detention, the *Miranda* and Article 38.22 safeguards were inapplicable—were not erroneous.  *See Garcia-Cantu*, 253 S.W.3d at 241.  Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to suppress, and we overrule Appellant's sole issue on appeal.

III.  *This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS<br>JUSTICE


May 29, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.