**Affirmed and Majority and Dissenting Opinions filed August 27, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00606-CR

### SUZANNE ELIZABETH WEXLER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1513928**

## MAJORITY OPINION

Appellant Suzanne Elizabeth Wexler was convicted of possession of methamphetamine with intent to distribute. *See* Tex. Health & Safety Code §§ 481.102, 481.112(d). The trial court sentenced appellant to serve 25 years in prison. Appellant appeals her conviction in two issues. Appellant asserts in her first issue that the trial court erred when it overruled her objection to the admission of a statement she made at the scene of her arrest and before she was given *Miranda* warnings. *See Miranda v, Arizona*, 384 U.S. 436 (1966). We overrule

this issue because appellant's statement was made before she was in custody. Appellant argues in her second issue that she received ineffective assistance of counsel because her trial counsel failed to request a trial continuance due to a missing defense witness. We overrule this issue because appellant has not demonstrated that she was prejudiced by her trial counsel's allegedly deficient handling of her case. We therefore affirm the trial court's judgment.

## BACKGROUND

Jerome Hill is a narcotics detective with the South Houston Police Department. Hill was assigned to the Harris County Sheriff's Department Narcotics Task Force doing undercover narcotics work. Hill received information from the Humble Police Department that crystal methamphetamine had been sold from a residence located at 318 Avenue A in South Houston. Based on that information, Hill set up surveillance of the residence by a South Houston narcotics K-9 unit. The K-9 unit was instructed to monitor traffic in and out of the 318 Avenue A residence. The K-9 unit eventually made three traffic stops of vehicles leaving the 318 Avenue A address where methamphetamine was discovered.[1]

As a result of the three traffic stops, Hill believed that the 318 Avenue A residence was being used to distribute drugs. According to Hill, appellant lived at the 318 Avenue A house and she was a suspect in the investigation, in fact, she was one of two targets of the investigation.[2] Hill obtained a search warrant for the 318 Avenue A house. The plan for searching the house called for uniformed police to initially block access to Avenue A. The Harris County Sheriff's Office High

---

[1] The traffic stops occurred on June 5, June 9, and June 12. The largest amount of methamphetamine discovered was 73 grams found during the June 5 traffic stop.

[2] Hill identified a second target of his investigation as "Jimmy." Hill testified that he "guess[ed] that it was [Jimmy's] house." According to Hill, Jimmy was not present at the house during the search.

Risk Operations Unit ("HROU") would then surround the house, serve the warrant, and conduct a protective sweep of the house. Only when the protective sweep was completed, and any people in the house had been removed, would the narcotics officers enter the house to conduct the search for narcotics.

On June 16, 2016, the HROU, narcotics officers, and other uniformed police units arrived on the scene. The uniformed police units blocked off both ends of the street to prevent any traffic on the street while the warrant was being executed. The HROU surrounded the house and announced their intention to search the home based on a search warrant over a loud speaker.[3] The HROU directed anyone in the house to exit. Appellant came out of the house where she was detained by the HROU and placed in the back seat of a patrol car.[4] According to Hill, once appellant was placed in the patrol car, she was detained as part of the investigation and she was not free to leave. The HROU then began its protective sweep of the house to ensure there were no threats present.

While the HROU was performing its protective sweep of the house, Hill stated the following to appellant: "Hey, we have a search warrant. We're going to find the drugs. Just tell me where they are." Appellant responded that the narcotics were "in her bedroom in a dresser drawer." At the time that Hill spoke with appellant, the actual search of the house by narcotics officers had not started, and no illegal drugs had been found. While it is undisputed that appellant was placed in the backseat of a patrol car for officer safety and so that police could conduct the search of the house, there is no evidence she was handcuffed or

---

[3] According to Hill, the loud speaker was on an armored vehicle that the HROU uses to serve warrants.

[4] A second occupant of the house, John Forster, was found in the small addition at the back of the house with a small amount of black tar heroin. Forster was placed in the back of a second patrol car. Forster was eventually arrested and convicted.

otherwise restrained by officers. In addition, there is no evidence that officers pointed firearms at appellant or threatened her. There was also no evidence that Hill was hostile in tone when he addressed appellant. While Hill considered appellant a suspect at the time of the search, he did not tell appellant that she was a suspect.

Once HROU had completed the protective sweep of the house, the narcotics officers entered to conduct the search. The house had two bedrooms and a small addition had been added to the back. Inside appellant's bedroom, officers found female clothing, drug paraphernalia, several cell phones, scales, and marijuana individually bagged for sale. Additionally, the narcotics officers found 25.077 grams of methamphetamine in appellant's dresser drawer. Along with the methamphetamine, the police found "a bunch of plastic baggies and some currency." Police also found handgun ammunition and magazines. According to Hill, the items that the narcotics officers found inside the house were consistent with the sale of narcotics. Once the search of the house had been completed, Hill placed appellant under arrest.

During trial appellant objected to the admission of her statement made in response to Hill's question. In appellant's view, Hill's question was a custodial interrogation and she should have received the warnings required by *Miranda* and article 38.22 of the Code of Criminal Procedure before being questioned. Because she was not given those warnings, appellant argued that her statement should be excluded. After allowing appellant's trial counsel to conduct a voir dire examination of Hill outside the presence of the jury, the trial court overruled appellant's objection and admitted appellant's statement.

During her case, appellant called a single witness to testify, Jimmy Sherlock. Sherlock testified that he had been friends with appellant for about twenty years.

According to Sherlock, appellant had moved out of the Avenue A house in April and was living with him. Sherlock explained that appellant had broken up with her boyfriend, Jimmy McCullough, and had decided to move out of his house. Sherlock testified McCullough was a drug dealer and that he believed the drugs found in the house were his. Sherlock further testified that he went with appellant to the Avenue A house on June 16, 2016 to pick up the last of her possessions. When they arrived at the Avenue A house, Sherlock dropped appellant off and he left. During cross-examination, Sherlock revealed that he had been previously convicted of burglary and robbery. Sherlock also admitted that appellant was a close friend.

The jury found appellant guilty and she was sentenced to serve 25 years in prison. Appellant moved for a new trial claiming that her trial counsel was ineffective for, among other things, failing to request a continuance in order to compel John Forster to appear to testify. The trial court held a hearing on appellant's motion. During the motion for new trial hearing, appellant did not call Forster, or produce any evidence related to Forster's availability to testify during appellant's trial, or his prospective testimony. Appellant instead relied on Forster's affidavit that had been previously secured by appellant's trial counsel. The trial court denied appellant's motion. This appeal followed.

## ANALYSIS

I. **The trial court did not commit reversible error when it overruled appellant's objection and admitted appellant's statement into evidence.**

Appellant argues in her first issue that the trial court committed reversible error when it overruled her objection to the admission of her statement made at the scene. In appellant's view, she was in custody when she was placed in the backseat of a patrol car, she should have received the warnings required by

5

*Miranda* and article 38.22 of the Code of Criminal Procedure before Hill questioned her, and because she did not, the trial court should have sustained her objection and excluded the statement.

Appellant did not file a pre-trial motion to suppress her statement. She instead objected to its admissibility during trial. After appellant objected, the trial court allowed appellant's trial counsel to question Hill outside the presence of the jury. The trial court then heard argument from appellant's counsel as well as the State before overruling appellant's objection. Because a motion to suppress is simply a specialized objection to the admissibility of evidence, we shall apply the same standard of review to the trial court's custody determination as if appellant had moved to suppress her statement. *See Kuether v. State*, 523 S.W.3d 798, 807, n.10 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

In reviewing a trial court's ruling on a motion to suppress, an appellate court applies an abuse-of-discretion standard and will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling. *Weide v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and decides the weight to give that testimony. *Id.* at 24–25. If a trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

In *Miranda*, the Supreme Court of the United States held that "the

6

prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Texas codified these safeguards in article 38.22 of the Texas Code of Criminal Procedure. Section 3(a) of article 38.22 provides that no oral statement of an accused "made as a result of custodial interrogation" shall be admissible against him in a criminal proceeding unless an electronic recording of the statement is made, the accused is given all specified warnings, including the *Miranda* warnings, and he knowingly, intelligently, and voluntarily waives the rights set out in the warnings. Tex. Code Crim. Proc. art. 38.22 § 3(a).

*Miranda* warnings and article 38.22 requirements are mandatory only when there is a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The meaning of "custody" is the same for purposes of both *Miranda* and article 38.22. *Id.* The State has no burden to show compliance with *Miranda* unless and until the record as a whole "clearly establishes" that the defendant's statement was the product of a custodial interrogation. *Id.* When considering whether a person is in custody for *Miranda* purposes, we apply a reasonable person standard. Our custody inquiry includes an examination of all the objective circumstances surrounding the questioning. *Herrera*, 241 S.W.3d at 525. The subjective belief of law enforcement officers about whether a person is a suspect does not factor into the custody determination unless that officer's subjective belief has been conveyed to the person being questioned. *Id.* at 525–26.

There are four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to

believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that she is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). Both state and federal courts recognize three categories of interaction between police and citizens: encounters, investigative detentions, and arrests. *Ortiz v. State*, 421 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Both detention and arrest involve a restraint on one's freedom; the difference is in the degree. *Id.* An arrest places a greater restraint on an individual's freedom of movement than does an investigative detention. *Id.* Persons temporarily detained for purposes of investigation are not in custody for *Miranda* purposes, and thus the right to *Miranda* warnings is not triggered during an investigative detention. *Hauer v. State*, 466 S.W.3d 886, 893 (Tex. App.— Houston [14th Dist.] 2015, no pet.). There is no bright line rule dividing investigative detentions and custodial arrests. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008). When called upon to make that determination, courts examine several factors including "the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and any other relevant factors." *Id.*

Appellant argues that she was in custody when Hill asked her where in the house the drugs were located. In making this argument, appellant emphasizes the level of force present at the scene of the search. Specifically, appellant points out (1) the large number of officers on the scene,[5] (2) the presence of an HROU

---

[5] There is no evidence in the record establishing the exact number of police on the scene.

8

armored vehicle, (3) the police had blocked the street prior to the search, and (4) had potentially surrounded the house. Appellant also relies on the fact that the police placed her in the backseat of a patrol car as well as Hill's trial testimony that she was not free to leave. Appellant also points out that she "was not told that she was not under arrest." Finally, appellant asserts that Hill "expressed to the appellant his suspicion that the appellant possessed drugs through his only question to the appellant."

We disagree appellant has established that she was in custody when Hill asked her about the location of the drugs. We turn first to Hill's testimony that appellant was not free to leave once she was placed in the patrol car. The fact that appellant's freedom of movement was restricted does not establish that she was under custodial arrest because a person temporarily detained for purposes of investigation also has her freedom of movement restricted. *See Ortiz*, 421 S.W.3d at 890 ("Both detention and arrest involve a restraint on one's freedom of movement; the difference is the degree."). "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." *Id.* at 891 (internal quotation marks omitted). While there were numerous police officers on the scene, there is no evidence appellant was aware of that number. There is also no evidence appellant was aware that the police had blocked access to the street, or that there was an armored vehicle on the scene. Even if she was, this evidence goes to only one of the factors listed in *Sheppard*, the amount of force used.

There is no evidence in the record that the police used physical force to

---

Hill did testify that there were between 20 and 25 HROU officers on the scene. Hill offered no testimony on the number of narcotics officers or uniformed patrol officers on the scene.

remove appellant from the house, handcuffed her at any time, threatened her, displayed a firearm, or even spoke to her in a hostile tone. *See Ortiz*, 421 S.W.3d at 891 ("The defendant bears the initial burden of demonstrating that a statement was the product of custodial interrogation, and the State has no burden to show compliance with *Miranda* until the defendant meets the initial burden."). There is however, evidence in the record that an investigation was under way when appellant was detained. *See Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.— Houston [14th Dist.] 2007, no pet.) ("Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation."). Further, there was evidence that appellant was detained so the HROU could perform a protective sweep of the house. *See Sheppard*, 271 S.W.3d at 290 (concluding officer's handcuffing of defendant was temporary detention, not an arrest, because it was done, in part, to enable officer to make protective sweep of scene). There was also evidence that appellant's detention was relatively brief and that the police did not remove appellant from the scene prior to Hill's question. *See id.* at 291. Hill was the only officer to talk with appellant and he did not inform her that she was under arrest or even a suspect. *See Herrera*, 241 S.W.3d at 525–26 ("The subjective belief of law enforcement officials about whether a person is a suspect does not factor into our 'custody' determination unless an official's subjective belief was somehow conveyed to the person who was questioned."). Finally, it was undisputed that illegal drugs had not been found in the house at the time Hill asked appellant where the drugs were located and thus Hill did not have probable cause to arrest appellant at that moment. *See Hernandez v. State*, 107 S.W.3d 41, 47 (Tex. App.—San Antonio 2003, pet. ref'd) ("An officer who lacks probable cause but whose observations lead to a reasonable suspicion that a particular person has committed, is

10

committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke that suspicion."). We conclude that the record supports the trial court's implied conclusion that appellant was temporarily detained, not under arrest, when Hill asked her where the drugs were located. As a result, Hill was not obligated to provide appellant the warnings required by *Miranda* and article 38.22 of the Code of Criminal Procedure. Therefore, the trial court did not err when it overruled appellant's objection and admitted her statement into evidence. We overrule appellant's first issue.

## II. Appellant did not establish that she received ineffective assistance of counsel.

Appellant asserts in her second issue that her trial counsel was ineffective because he did not ask for a continuance to compel Forster to appear to testify during her trial.

### A. Standard of review and applicable law

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). However, reasonably effective assistance of counsel does not mean error-free representation. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without

the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to claims of ineffective assistance under the Texas Constitution). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Strickland*, 466 U.S. at 697. If a criminal defendant can prove trial counsel's performance was deficient, he still must prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Malett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

When, as here, an appellant raises an ineffective-assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of the motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding appropriate standard of review for claim of ineffective assistance of counsel brought forth in motion for new trial is abuse of discretion); *Robinson v. State*, 514 S.W.3d 816, 823 (Tex. App.—Houston [1st

Dist.] 2017, pet. ref'd). In those circumstances, we review the trial court's application of the *Strickland* test through an abuse-of-discretion standard. *Charles*, 146 S.W.3d at 208. Generally, applying this standard means that we must decide whether the trial court's ruling was arbitrary or unreasonable. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). As a reviewing court, we must afford "almost total deference" to a trial court's determination of historical facts and its application of the law to fact questions the resolution of which turns on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In the absence of express findings, we presume that the trial court made all findings, express and implied, in favor of the prevailing party. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). We therefore view the evidence in the light most favorable to the trial court's ruling, and we will uphold that ruling if it was within the zone of reasonable disagreement. *See Webb*, 232 S.W.3d at 112.

### B. Appellant has not shown that she was prejudiced by her trial counsel's decision to not ask for a continuance.

Appellant asserts in her second issue that her trial counsel's performance was deficient because he failed to ask for a continuance of the trial in order to compel Forster to appear and testify on her behalf. Appellant goes on to argue that she was prejudiced by this deficient performance because Forster's testimony would have been beneficial to her defense. According to appellant, if her trial counsel had sought a continuance, Forster, who was found in the house during the search with black tar heroin, would have "been able to testify consistently with some of the items that Mr. Sherlock testified to, such as the appellant moving out of the residence in early April [and that appellant] was only present at the residence during the raid to retrieve a few of her remaining items from the residence." Appellant also asserts that Forster would have been able to testify that

13

the methamphetamine found in the bedroom "dresser was not the appellant's, but Jimmy's." Appellant concludes by arguing that Forster's testimony was "necessary and crucial to the defense" because "it would have helped to corroborate the testimony of Mr. Sherlock, whose credibility was damaged by the State due to his prior conviction and would have provided testimony from someone who was actually present during the raid of the residence."

Appellant has not demonstrated that she was prejudiced by her trial counsel's failure to request a continuance because, by her own admission, Forster's proposed testimony was cumulative of Sherlock's testimony. *See Ex parte Flores*, 387 S.W.3d 626, 638 n.53 (Tex. Crim. App. 2012) ("Applicant cannot show prejudice for failure to call a witness whose testimony would be cumulative of an expert who did testify."); *Crawford v. State*, 355 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (trial counsel was not ineffective for failing to call a passenger who was in defendant's car because defendant did not identify any fact to which witness would testify that trial court had not already heard from another witness); *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd) (defendant's trial counsel was not ineffective for failing to call certain witnesses when proposed witnesses' testimony would have been cumulative of other testimony). Because appellant has not established the second *Strickland* prong, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for new trial. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Wise, Zimmerer, and Hassan (Hassan, J., dissenting). Publish — TEX. R. APP. P. 47.2(b).

15