**Affirmed and Memorandum Opinion filed April 14, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-01028-CR

---

### KENNETH CANTON OGG, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Cause No. 18257**

---

## M E M O R A N D U M   O P I N I O N

Appellant Kenneth Canton Ogg appeals his conviction for sexual assault and prohibited sexual conduct. In three related issues, appellant challenges the trial court's admission of two oral statements appellant made to a federal law enforcement officer. According to appellant, the statements were inadmissible under Texas Code of Criminal Procedure article 38.22 because he was in custody and the statements were not electronically recorded, as statutorily required, and because he did not make the statements voluntarily. Because we conclude that

appellant was not in custody at the time he made the statements and that appellant made the statements voluntarily, we hold that the trial court did not err in admitting the evidence. We do not reach appellant's remaining issue concerning harm. We affirm the trial court's judgment.

## Background

A Grimes County grand jury indicted appellant on three counts of sexual assault and three counts of prohibited sexual conduct. Appellant pleaded not guilty.

Appellant's half-sister, who we refer to as Andrea, testified that when she was nineteen years old she lived with her father and step-mother. Appellant also lived at the house with his wife and two children. Andrea testified that appellant sexually assaulted her one night in her bedroom.[1]

Two months after the alleged sexual assault, Andrea and her step-mother went to the Grimes County Sheriff's Office and reported the offense. Special Agent Micky Boettger, of the Army's Criminal Investigation Division, spoke on two separate occasions with appellant at Fort Hood, where appellant was serving as a member of the military police in the Army. Agent Boettger testified that appellant was not under arrest or otherwise detained during these meetings. After Agent Boettger advised appellant of his rights as required under federal law, appellant signed an acknowledgment that he understood his rights and that he was willing to discuss the alleged offense. Agent Boettger testified that, during the first meeting, appellant confirmed that he had sex with Andrea and that appellant said "that during the incident [Andrea] told [appellant] that we shouldn't do this and we

---

[1] Andrea became pregnant and later gave birth to a male child. Post-birth DNA testing confirmed that appellant was the child's biological father.

2

should stop." At the end of the first meeting between Agent Boettger and appellant, appellant asked to leave and was allowed to do so.

At appellant's request, appellant returned a few days later to speak again with Agent Boettger. During this second meeting, appellant "actually said that [Andrea] did tell him no to the sex and that we shouldn't. And she said no and cut it out on another occasion." Appellant then requested an attorney, at which point Agent Boettger terminated the interview and appellant left. Agent Boettger did not electronically record either meeting.

At trial, the State desired to call Agent Boettger to testify about the substance of appellant's statements during both meetings. Appellant objected, arguing that his statements to Agent Boettger should not be admitted because they were not electronically recorded even though he was in custody, and the lack of a recording impaired his right of cross-examination. After hearing both appellant and Agent Boettger testify outside the jury's presence, the trial court overruled appellant's objection and allowed Agent Boettger to testify in front of the jury. The trial court, however, also included the following instruction in the jury charge:

> You have heard evidence that the defendant made an oral statement, to Special Agent Boettger on March 31, 2017 [and April 3, 2017]. If you find the defendant did make the statement, you may consider that statement against the defendant only if you resolve a preliminary question in favor of the state.
>
> A statement of an accused may be considered against the accused only if the statement were freely and voluntarily made without compulsion or persuasion. Therefore, you may consider any statement you believe the defendant made only if you all agree the state has proved, beyond a reasonable doubt, that the defendant made the statement freely and voluntarily without compulsion or persuasion.
>
> Unless you find the state has proved, beyond a reasonable doubt, that the oral statement made [to] Special Agent Boettger on March 31,

3

2017 [and April 3, 2017] was in fact made and that it was made freely and voluntarily, you must not consider the statement for any purpose.

After the State abandoned one count of sexual assault and one count of prohibited sexual conduct, the jury found appellant guilty of all remaining charges in the indictment. The jury assessed eight years' confinement for each charge, to run concurrently. Appellant timely appealed.

## Issues Presented

In his first two issues, appellant challenges the admission of his statements through Agent Boettger's testimony because neither meeting was electronically recorded and the lack of a recording prejudiced his ability to meaningfully cross-examine Agent Boettger. In his third issue, appellant argues that the court erroneously failed to make findings of fact on the voluntariness of his statements to Agent Boettger, as required by Code of Criminal Procedure article 38.22, section 6.

## Standard of Review

We generally review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). A trial court abuses its discretion only when its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, it has not abused its discretion, and we defer to that decision. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will uphold the court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

## Analysis

### A. Admissibility of appellant's oral statements

Texas Code of Criminal Procedure article 38.22 governs the admissibility of certain statements made by an accused. *See* Tex. Code Crim. Proc. art. 38.22. As relevant here, section 3 provides that no oral statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding, unless, *inter alia*, it is electronically recorded and the accused knowingly, intelligently, and voluntarily waives certain enumerated rights. *Id.* art. 38.22, § 3. Section 8 provides that, notwithstanding any other provision, an oral statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding if the statement was obtained by a federal law enforcement officer in this state and was obtained in compliance with federal laws. *Id.* art. 38.22, § 8. The requirements of article 38.22, sections 3 and 8 are triggered only by "custodial interrogations." *Id.* art. 38.22, §§ 3, 8; *see also, e.g.*, *Lopez v. State*, 314 S.W.3d 54, 59 (Tex. App.—San Antonio 2010, pet. ref'd).

In his first issue, appellant argues that article 38.22, section 8—ostensibly the basis of the trial court's admissibility ruling—is unconstitutional as applied to him because that section may allow an oral statement resulting from a custodial interrogation to be admitted even though it is not electronically recorded. Because the statements at issue were not electronically recorded, appellant urges, he could not meaningfully cross-examine Agent Boettger, which, as argued in issue two, deprived appellant of his Fifth, Sixth, and Fourteenth Amendment rights of due process and cross-examination. Appellant's arguments presuppose that the trial court admitted Agent Boettger's testimony based on article 38.22, section 8.

In response, the State says, first, we need not address appellant's constitutional argument because Agent Boettger's testimony was not admitted

5

under article 38.22, section 8; and, in any event, neither section 3 nor section 8 applies because appellant was not in custody when he made the challenged statements. Accordingly, the State argues, the trial court properly admitted appellant's statements through Agent Boettger's testimony under article 38.22, section 5, which does not preclude admission of an accused's statement not stemming from a custodial interrogation. *See* Tex. Code Crim. Proc. art. 38.22, § 5.

For the reasons explained below, we conclude that appellant's statements did not result from custodial interrogations, and our conclusion is dispositive of appellant's first two issues so we address only that point. Tex. R. App. P. 47.1.

A trial judge's ultimate custody determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012); *Herrera*, 241 S.W.3d at 526-27; *Kuether v. State*, 523 S.W.3d 798, 807 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial court's custody determination de novo. *Herrera*, 241 S.W.3d at 527. In other words, we defer to the trial court's findings regarding the circumstances surrounding the interrogation (unless challenged and unsupported by evidence), and we then make an ultimate legal determination whether a reasonable person would not have felt at liberty to leave. *See State v. Saenz*, 411 S.W.3d 488, 493 (Tex. Crim. App. 2013). It is the defendant's burden to prove that a statement he seeks to exclude was the product of a "custodial interrogation." *Herrera*, 241 S.W.3d at 526; *Martinez v. State*, 496 S.W.3d 215, 218 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). If there are no findings of

fact, we review the evidence in the light most favorable to the court's ruling and assume the court made implicit findings that support its ruling as long as those findings are supported by the record. *See Herrera*, 241 S.W.3d at 527; *Kuether*, 523 S.W.3d at 807.[2]

The meaning of "custody" is the same for purposes of *Miranda*[3] and article 38.22. *Herrera*, 241 S.W.3d at 526; *Martinez*, 496 S.W.3d at 219. A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

Generally, when a person voluntarily accompanies law enforcement to a certain location, even though he knows or should know that law enforcement suspects that he may have committed or may be implicated in committing a crime, that person is not restrained or "in custody." *Livingston v. State*, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987); *Miller v. State*, 196 S.W.3d 256, 264 (Tex. App.—Fort Worth 2006, pet. ref'd). So long as the circumstances show that a person is acting only upon the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody. *See Anderson v. State*, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996); *see also Meek v. State*, 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990) (citing *Shiflet v. State*, 732 S.W.2d 622, 631 (Tex. Crim. App. 1985)).

The Court of Criminal Appeals has identified four general situations which may constitute custody: (1) if the suspect is physically deprived of his freedom in

---

[2] These standards apply to the custody determination regardless whether appellant opposed admission of the statements by a trial objection, as here, or by a pre-trial motion to suppress. *See Kuether*, 523 S.W.3d at 807 n.10.

[3] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

any significant way; (2) if a law enforcement officer tells the suspect not to leave; (3) if a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) if there is probable cause to arrest the suspect, and the law enforcement officer did not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). The first three situations require the suspect's freedom of movement to be restricted to the degree associated with arrest, not merely that of an investigative detention. *Saenz*, 411 S.W.3d at 496. The fourth requires the manifestation of probable cause to be combined with other circumstances that would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*; *see also Dowthitt*, 931 S.W.2d at 255 (fourth category applies only when officer's knowledge of probable cause is communicated to suspect or by suspect to officer; even then custody is established only "if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest").

By admitting the testimony, the trial court implicitly concluded that appellant was not in custody when he made either statement to Agent Boettger.[4] On appeal, appellant does not argue substantively that he was in custody but instead merely presumes that he was. Our review of the record, however, confirms that appellant's statements to Agent Boettger did not fall within the purview of

---

[4] We abated the appeal to allow the trial court to make written findings of fact and conclusions of law, and the court subsequently caused a supplemental clerk's record to be filed in our court containing written findings and conclusions. In the written order, the trial court concluded that appellant was not in custody. We granted the parties an opportunity to submit additional briefing based on the written findings and conclusions, but neither party filed additional briefs.

article 38.22, sections 3 or 8, viewing the evidence in the light most favorable to the trial court's implicit and unchallenged written findings.

Agent Boettger testified that for the first meeting he made an appointment to speak with appellant, and appellant came to Agent Boettger's office. Agent Boettger did not recall if anyone escorted appellant to Agent Boettger's office.[5] As required under federal law, Agent Boettger "advise[d] [appellant] of [his] rights in order to be able to talk to [appellant] about why [Agent Boettger] [was] there." Appellant signed an acknowledgment that he understood these rights and that he was willing to discuss the alleged offense.[6]

Agent Boettger and appellant discussed the allegations. After they finished talking, "[appellant] asked to leave. And so [Agent Boettger] let him leave and [appellant] -- he wanted to come back." Agent Boettger was clear that he did not

---

[5] According to appellant, his commanding officer ordered him to appear. There is no evidence Agent Boettger compelled his attendance, however. Appellant also testified that his squad leader escorted him to at least one interview. The trial court was not required to accept appellant's testimony regarding the circumstances of the meetings, and we defer to the trial court's implicit findings. *See Alford*, 358 S.W.3d at 652; *Herrera*, 241 S.W.3d at 526-27.

[6] The signed document, entitled "Rights Warning Procedure/Waiver Certificate," provided that, before Agent Boettger asked appellant any question about the offense of which he was suspected, Agent Boettger "made it clear to [appellant] that [appellant had] the following rights": (1) appellant did not have to answer questions or say anything; (2) anything appellant said or did could be used as evidence against him in a criminal trial; (3) appellant had the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with appellant during questioning; and (4) appellant had the right to stop answering questions at any time or speak privately with a lawyer before answering further. After acknowledging that he understood those rights as stated, appellant agreed that he was "willing to discuss the offense(s) under investigation and make a statement without talking to a lawyer first and without having a lawyer present with [him]." The document provided that, if the interviewee did not want to give up his rights, he could choose an option "I want a lawyer" or "I do not want to be questioned or say anything." Appellant did not mark either option. This document was not entered into evidence until the trial court overruled appellant's objection and admitted Agent Boettger's testimony before the jury. However, at the time the trial court considered appellant's article 38.22 complaint, the court could consider Agent Boettger's testimony that appellant had "sign[ed] off on a waiver of rights to speak with [Agent Boettger]."

9

ask appellant to come back, but rather that appellant asked to return. Agent Boettger did not order appellant to return.

When appellant returned for the second visit a few days later, Agent Boettger again advised appellant of his *Miranda* rights and appellant signed a second acknowledgment of his rights. Agent Boettger and appellant discussed the allegations. At the end of the meeting, "[appellant] asked to speak with an attorney," and Agent Boettger "ceased questioning." Appellant then freely left the building.

Agent Boettger agreed that in both instances, appellant was not handcuffed or arrested and was allowed to leave freely. Appellant similarly agreed that he was neither detained nor in custody.

Agent Boettger's testimony, which the trial court found credible, establishes that appellant was not physically deprived of his freedom, that Agent Boettger did not tell appellant that he could not leave, and that Agent Boettger did not create a situation that would lead a reasonable person to believe that his freedom of movement had been significantly restricted. *See Gardner*, 306 S.W.3d at 294 (discussing three situations that may constitute custody). This leaves only the fourth category of situations that the Court of Criminal Appeals has recognized may constitute custody: if there is probable cause to arrest the suspect, and the law enforcement officer did not tell the suspect he is free to leave. *See id.* Here, even assuming that probable cause existed at the time of Agent Boettger's interviews, there is no evidence that Agent Boettger manifested this suspicion to appellant or told appellant that he was not free to leave. *See id.*; *Dowthitt*, 931 S.W.2d at 255.

Given the factual circumstances surrounding the meetings that the trial court could have reasonably accepted, we determine that the record supports the trial court's conclusion that appellant was not in custody during either meeting when he

made the challenged statements. *See, e.g.*, *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding person not in custody when he came voluntarily to police station, was immediately informed that he was not under arrest, participated in interview, and left police station without hindrance); *Meek*, 790 S.W.2d at 622 (holding person was not in custody when he came to station voluntarily at time of his own choosing, was allowed to step outside building and go unaccompanied to his car during interviews, and "a few hours" later was allowed to leave unhindered after statements were completed); *Nelson v. State*, 405 S.W.3d 113, 129-30 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (concluding defendant was not subjected to custodial interrogation where she met officer at police station, acknowledged in recorded statement that she was there voluntarily and was making statement voluntarily, and officer told defendant he was going to let her go home at end of interview); *Ervin v. State*, 333 S.W.3d 187, 211 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (finding no custody when suspect voluntarily went to station, was told she could leave, was not handcuffed, was at station for four hours, and went home after making incriminating statements); *Nickerson v. State*, 312 S.W.3d 250, 257 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Because appellant's statements did not result from a custodial interrogation, article 38.22, sections 3 and 8 do not apply and, the trial court did not err in admitting Agent Boettger's testimony over appellant's objection. We need not address any of appellant's alternative arguments under his first and second issues.

## B. Voluntariness

In his third issue, appellant argues that the court erroneously failed to make findings of fact on the voluntariness of his statements to Agent Boettger, as required by Code of Criminal Procedure article 38.22, section 6, and he appears to suggest, but does not argue expressly, that he did not make his statements

11

voluntarily. A statement of an accused may be used in evidence against him if it appears that the same was "freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. art. 38.21. If a question is raised regarding the voluntariness of a statement, the trial court "must make an independent finding . . . as to whether the statement was made under voluntary conditions." *Id.* art. 38.22, § 6. If the trial court finds the statement to have been made voluntarily and thus admissible, the trial court must then "enter an order stating its conclusion" that the statement was made voluntarily and also must make "specific finding of facts upon which the conclusion was based." *Id.*

A claim under the Texas Code of Criminal Procedure that an accused's statement was involuntarily made does not turn solely on police overreaching: "The behavior of the police may or may not be a factor. A confession given under the duress of hallucinations, illness, medications, or even a private threat," could be involuntary. *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008); *see also id.* at 181 (claim that confession was involuntary under article 38.22 "is a statutory claim and focuses upon appellant's subjective mental state"). In general, the State has the burden of proving by a preponderance of the evidence the voluntariness of an accused's statement. *Vasquez v. State*, 411 S.W.3d 918, 920 n.11 (Tex. Crim. App. 2013).

We overrule the part of appellant's third issue in which he complains that the trial court failed to make written voluntariness findings. After we abated the appeal, the trial court signed a written order finding and concluding that both statements were voluntary. Appellant has not filed any additional briefing challenging the trial court's written findings and conclusions.

To the extent appellant's original brief can be liberally construed to argue that his statements were involuntary, we review the trial court's findings on the

voluntariness of a statement under an abuse of discretion standard. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). We look to the totality of the circumstances surrounding the acquisition of a statement to determine whether it was made voluntarily or whether the accused's will was overborne. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007); *Coleman v. State*, 440 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The trial court is the sole judge of the credibility of the witnesses and the weight of their testimony. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). We will not disturb a trial court's finding that is supported by the record. *Garza v. State*, 213 S.W.3d 338, 346-47 (Tex. Crim. App. 2007).

Agent Boettger testified that appellant twice signed written admonishments regarding his rights not to answer any questions, his right to counsel, and his right to terminate the interview. Agent Boettger testified that appellant came to the first interview per an appointment, that Agent Boettger had not ordered appellant to the interview, and that appellant requested the second interview before leaving the premises following the first interview. Appellant returned voluntarily several days later, having not changed his mind about wanting a second meeting. Agent Boettger testified that appellant answered all of Agent Boettger's questions until the end of the second interview, when appellant requested an attorney, at which point Agent Boettger terminated the interview.

Appellant, on the other hand, testified that he did not make the initial appointment, that he was ordered to Agent Boettger's office by appellant's commanding officer, that appellant did not feel free to leave, that he felt that he had to respond to Agent Boettger's questions, and that he was escorted by his squad leader to at least one of the interviews.

13

The trial court was free to believe Agent Boettger's testimony and to disbelieve appellant's testimony. Agent Boettger's testimony, coupled with the written, signed waivers of appellant's rights, together are sufficient to support the trial court's findings and conclusions that appellant voluntarily made the statements to Agent Boettger. *See, e.g.*, *Cherry v. State*, No. 06-12-00080-CR, 2013 WL 4624934, at *3-4 (Tex. App.—Texarkana Aug. 30, 2013, no pet.) (mem. op., not designated for publication) (noting that court's determination of voluntariness issue "boil[ed] down to a determination of credibility" and holding that trial court did not abuse its discretion in admitting accused's statements). The issue then became one for the jury to ultimately decide.[7]

---

[7] As the Court of Criminal Appeals has explained:

This is the sequence of events that seems to be contemplated by Section 6: (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction.

*Oursborne*, 259 S.W.3d at 175 (internal footnote omitted). The trial court instructed the jury on the voluntariness of appellant's statements.

14

## Conclusion

The trial court did not abuse its discretion in admitting Agent Boettger's testimony regarding appellant's statements over appellant's objection. We overrule appellant's issues.

We affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Wise, Jewell, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).